**Robert FITZKE and Joy Fitzke, Plaintiffs-Appellants,**

v.

**Barry SHAPPELL, Deputy Sheriff, and Elwin Smith, Sheriff, of Eaton County, Michigan, Jointly and Severally, Defendants-Appellees.**

*No. 72–1154.*

United States Court of Appeals, Sixth Circuit.

Oct. 3, 1972.

Daniel S. Cooper, Southfield, Mich., for plaintiffs-appellants; Cooper, Baskin & Feldstein, Southfield, Mich., Hal W. Ziegler, Jackson, Mich., on briefs.

David O. Haughey, Grand Rapids, Mich., for defendants-appellees; Smith, Haughey, Rice, Roegge & Gould, Wallson G. Knack, Warner, Norcross & Judd, Grand Rapids, Mich., on briefs.

Before PHILLIPS and MILLER, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

WILLIAM E. MILLER, Circuit Judge.

This is an appeal from the dismissal of appellants' civil rights action brought pursuant to 42 U.S.C. § 1983.[1] The complaint and amended complaint set forth three counts. In addition to the first count, which purports to state a cause of action under § 1983, the complaint in counts 2 and 3 states claims for false imprisonment and negligence. We do not consider the sufficiency of the state claims.

The complaint, as amended, alleged that Fitzke had been arrested "without just cause or provocation" by the defendant Shappell after he blacked out and struck a telephone pole as a result of "a bleeding brain lesion." It is alleged that the arresting officer, Shappell, who apparently arrived at the scene soon after the accident, "conveyed Plaintiff to Eaton County Jail and incarcerated him there," having made no "inquiry into" nor expressed "concern for the physical condition" of the plaintiff, now appellant, Fitzke. The complaint affirmatively asserts that "[P]laintiff complained of leg pain and limped badly and communicated the need for medical attention, and said medical attention was denied him." It is further alleged that "[u]pon arriving at the Eaton County Jail or immediately thereafter, Plaintiff complained of said pain and numbness, and instead of obtaining vitally needed medical attention, Defendant(s) merely told Plaintiff to rub the areas of pain and numbness." The complaint alleges that appellant was at the time "suffering from a blood clot in the brain" and that he "was held in the said jail, from 1:30 AM on February 24, 1971, until 6:30 PM on the same day, a period of 17 hours, without necessary medical treatment, during which period he was suffering from serious brain injury, and during which period he was denied requested medical treatment." Further, the complaint alleges that as a result of "the failure to provide the requested medical treatment when . . . [Fitzke] was unlawfully incarcerated," he found it necessary to undergo a "craniotomy in which his skull was opened and the damaged areas of the brain removed." It is the appellants'

---

1. The appellees moved to dismiss "pursuant to FRCP 12(b) or in the alternative FRCP 56." In dismissing the action the district court stated that "defendant's *motions* to dismiss under FRCP 12(b) and for summary judgment under FRCP 56 are granted." Rule 12(b) of the Federal Rules of Civil Procedure provides:

    If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

    Since affidavits were presented by the appellees and since the opinion of the court below reveals that they were considered, we treat the disposition below as summary judgment for the defendants.

contention that the extent of brain damage was directly related to the delay in receiving medical attention and that he should recover under the Civil Rights Act for the residual injury that resulted from the delay in his receiving such attention.

The appellees moved to dismiss and for summary judgment on the grounds that the complaint failed to state a cause of action and that the court lacked subject matter jurisdiction. The affidavits of Captain Charles M. Kennedy and Deputy C. E. Eddington, both of the County Sheriff's Department, and Dr. Daniel Joseph, a physician, were filed in support of this motion. Captain Kennedy, who came on duty at 8:00 AM on February 24, 1971, stated in his affidavit that about 9:30 or 10:00 AM on that day Deputy Eddington requested that he look at Fitzke; that he did so; and that when Fitzke complained about his leg, he, Kennedy, told Fitzke that he would call a doctor. Kennedy further stated that he did call a doctor within ten minutes after seeing Fitzke and that this doctor subsequently examined Fitzke "after lunch, approximately 1:00 PM." Deputy Eddington, who went on duty at 7:45 AM, stated in his affidavit that he first saw Fitzke at approximately 9:00 AM when Fitzke "stated that his leg was asleep." Finally Dr. Joseph, the physician called by Captain Kennedy, stated in his affidavit:

On February 24, 1971, I went to the Eaton County jail at approximately 2:00 P.M., pursuant to the request of the Eaton County Sheriff's Department, and examined Robert Fitzke, an inmate therein.

Later that same day, at approximately 5:30 p. m., I returned to the jail and again examined Mr. Fitzke. At that time, Mr. Fitzke was removed to the hospital.

On the basis of the pleadings and affidavits, the district court found appellees' motions for dismissal and summary judgment to be well taken.

■ Two elements are necessary for recovery under the terms of § 1983. "First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States;" and second, he must show that the defendant deprived him of that right "under color of law." Adickes v. S. H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).[2] It is, of course, not disputed that the complaint sufficiently alleges the second of these requirements. However, the appellees contend, and the district court agreed, that if Count 1 of the complaint states a cause of action at all it is a tort action for negligence and not the deprivation of any constitutional right. We cannot agree.

The allegations of one denied medical attention and incarcerated after an automobile accident have been held to state a cause of action under 42 U.S.C. § 1983. Hughes v. Noble, 295 F.2d 495 (5th Cir. 1961).[3] In Stiltner v. Rhay, 371 F.2d

2. *See, e. g.,* Monroe v. Pape, 365 U.S. 167, 184, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. The allegations of Hughes' complaint were described by the court of appeals thusly:

The complaint alleges that plaintiff lost control of his automobile and ran off the highway into a ditch, with a result that his neck was broken; and, further, that: "the defendant without any just cause or provocation and under color of his authority as Sheriff of Clarke County, Alabama, then took the plaintiff into custody and placed him under arrest thereby causing plaintiff to be incarcerated in the County Jail of Clarke County, Alabama. The plain-

420, 421 (9th Cir. 1967),[4] the Ninth Circuit, citing *Hughes, supra,* noted that "[u]nder exceptional circumstances the failure to provide or permit access to medical care may give rise" to a violation of one's Fourteenth Amendment rights. The basis of concern where needed medical care is refused to one incarcerated is, as stated in McCollum v. Mayfield, 130 F.Supp. 112, 115 (N.D.Cal. 1955), that such refusal "could well result in the deprivation of life itself. . . ."

The logic of these pronouncements is not difficult to perceive. An individual incarcerated, whether for a term of life for the commission of some heinous crime, or merely for the night to "dry out" in the local drunk tank, becomes both vulnerable *and* dependent upon the state to provide certain simple and basic human needs. Examples are food, shelter, and sanitation. Facilities may be primitive but they must be adequate. Medical care is another such need. Denial of necessary medical attention may well result in disabilities beyond that contemplated by the incarceration itself.

The result may be crippling injury, as alleged here, or, as the *Stiltner* court pointed out, the very deprivation of life itself, since, *restrained by the authority of the state,* the individual cannot himself seek medical aid or provide the other necessities for sustaining life and health.

■ Thus it is that fundamental fairness and our most basic conception of due process mandate that medical care be provided to one who is incarcerated and may be suffering from serious illness or injury. This is not to say that every request for medical attention must be heeded nor that courts are to engage in a process of second-guessing in every case the adequacy of medical care that the state provides. But where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process. Hughes v. Noble, *supra;* McCollum v. Mayfield, *supra.*[5]

■ The complaint before us sets forth such allegations.[6] Fitzke alleged

---

tiff was then locked in a cell and despite his repeated requests for medical attention it was denied him. The plaintiff was further denied the right to use a telephone to call a physician or anyone else to come attend to his injuries even though the plaintiff offered to and had the means of paying for said attention. The plaintiff was locked in his cell from to-wit: 10:30 P.M. on July 2, 1960, until to-wit: 11:30 A.M. on July 3, 1960, despite his repeated requests for medical attention and severe pain which he was forced to endure. Immediately upon his release the plaintiff sought medical attention and his injuries were diagnosed as two dislocated and one fractured cervical vertebrae. That the plaintiff was hospitalized and in traction for a period of fifteen (15) days after his release from the jail. That he was compelled to wear a brace about his neck for a period of five months which all resulted in his losing time from his work."

4. In *Stiltner* it appears upon the face of the complaint that Stiltner, a state inmate, was not complaining about the refusal to provide medical care, but rather about the inadequacy of medical care which was provided. Stiltner v. Rhay, 371 F.2d 420, 421 n. 3 (9th Cir. 1967).

5. In McCollum v. Mayfield, 130 F.Supp. 112, 115 (N.D.Cal.1955), the district court stated:

A refusal to furnish medical care when it is clearly necessary, such as is alleged here, could well result in the deprivation of life itself; it is alleged that plaintiff suffered paralysis and disability from which he will never recover. This amounts to the infliction of permanent injuries, which is, to some extent, a deprivation of life, of liberty and of property. Since these rights are protected by the Fourteenth Amendment to the Federal Constitution, the complaint sufficiently alleges the deprivation of a right, privilege or immunity secured by the Constitution and laws of the United States.

6. In judging the sufficiency of the complaint we are bound to indulge in all reasonable inferences which might be drawn

that his arrest followed on the heels of and stemmed from an automobile accident, that he was limping, that he complained of pain and numbness in his leg, and that he requested medical attention. Such allegations do reflect circumstances sufficiently indicative of injury to warrant medical attention. Accordingly, the complaint states a cause of action cognizable under 42 U.S.C. § 1983.[7]

We turn to the question whether, notwithstanding the fact that the complaint adequately alleged a cause of action under § 1983, summary judgment might have been appropriate in light of the three affidavits filed by the appellees which were not controverted by rebutting evidentiary material. Rule 56(e) of the Federal Rules of Civil Procedure provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party

may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

That affidavits filed in support of a motion for summary judgment are not controverted does not necessarily require its being granted, although the statements contained therein must be accepted as true. One moving for summary judgment has "the burden of showing the absence of a genuine issue of any material fact, and for these purposes the material . . . [which the appellees] lodged must be viewed in the light most favorable to the opposing party." Adickes v. S. H. Kress & Co., *supra*, at 157, 90 S.Ct., at p. 1608.[8]

---

therefrom. Further, as this court has noted, "[a] case brought under the Civil Rights Act should not be dismissed at the pleading stage unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Lucarell v. McNair, 453 F.2d 836, 838 (6th Cir. 1972). Scher v. Board of Education of West Orange, 424 F.2d 741, 744 (3rd Cir. 1970).

7. The appellees and the court below assert that appellants' claim is for mere negligence and not the deprivation of a constitutionally protected right. This court has only recently pointed out in Puckett v. Cox, 456 F.2d 233, 235 (6th Cir. 1972):

In reliance on this ruling by the Supreme Court, numerous courts have recognized that various types of tortious conduct—including some forms of negligence—can be the basis for relief under § 1983. *See, e. g.,* Stringer v. Dilger, 313 F.2d 536, 540–541 (10th Cir. 1963); Joseph v. Rowlen, 402 F.2d 367, 369–370 (7th Cir. 1968); Jenkins v. Averett, 424 F.2d 1228, 1232 (4th Cir. 1970). *Cf.* Daniels v. Van De Venter, 382 F.2d 29, 31 (10th Cir. 1967); Whirl v. Kern, 407 F.2d 781, 787–789 (5th Cir. 1968), cert. denied, 369 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969).

While it might be said that appellants have asserted that appellees were negligent in failing to provide medical care for Fitzke, the argument that appellees' omission does not rise to constitutional proportions ignores the fact that as a result of arrest and incarceration by appellees the appellant was effectively denied the opportunity of obtaining the aid which might have prevented serious brain damage.

8. Rule 56(c) of the Federal Rules of Civil Procedure states:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

See discussion, 6 Moore's Federal Practice ¶ 56.15 [3] (2d ed. 1972) The treatise states at pp. 2335–6:

The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under ap-

As the Court further pointed out in Adickes v. S. H. Kress & Co., 398 U.S. at 160, 90 S.Ct. at 1609, the Advisory Committee Note on the 1963 Amendment to subdivision (e) of Rule 56 made plain that " 'where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied *even* if no opposing *evidentiary* matter is presented.' "

Here, appellees rely heavily on the affidavits of Kennedy, Eddington and Joseph which show that concern was expressed for Fitzke's condition as early as 9:00 AM on September 24, 1971, and that some medical attention was actually provided the appellant by at least 2:00 PM on that day. The appellees point out in their brief that "the court below was of the opinion that any inadequacy of medical treatment of the plaintiff at the hands of the defendants would not amount to a violation of the Civil Rights Act, because of the unrefuted facts that the Sheriff's Department did, in fact, request medical attention for Mr. Fitzke, and medical attention was provided for him on two occasions at the jail prior to the time he was removed to the hospital." It is appellees' view that summary judgment was mandated under Rule 56(e) of the Federal Rules of Civil Procedure.

■ Even assuming, as we must, the veracity of the three affidavits, we cannot agree with the appellees' conclusion. These affidavits do not respond to nor in any way negate what we regard as the essential allegations of the complaint. Hence it is impossible to find that they demonstrate "the absence of any genuine issue of material fact." It is true that the affidavits controvert appellant's contention that he did not receive medical care for approximately seventeen hours. What they do show is that the time lapse was twelve hours. It is further true that they tend to show that *the day shift* at the Eaton County Jail on February 24, 1971, acted properly and with some sensitivity to Fitzke's plight. These affidavits do not, however, deny the appellant's allegations regarding Fitzke's treatment at the time of his arrest or thereafter except insofar as they demonstrate, as stated, that he received medical attention approximately twelve rather than seventeen hours after his accident and arrest. Nor do the affidavits offer any circumstances tending to show that Fitzke was obviously uninjured at the time of the accident.[9]

---

plicable principles of substantive law, entitle him to judgment as a matter of law.

The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact.

*See, e. g.,* United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed. 2d 176 (1962).

9. The weakness of appellees' contentions are reflected in their attempt to distinguish Hughes v. Noble, 295 F.2d 495 (5th Cir. 1961). See note 3, *supra*, for the allegations of the complaint before the Fifth Circuit in *Hughes.*

Appellees assert that the cases are distinguishable for three reasons: (1) Hughes was never provided medical attention while Fitzke was examined by a doctor called by Captain Kennedy; (2) Hughes was denied the right to make phone calls while Captain Kennedy offered to call Mrs. Fitzke between 9:30 AM and 10:30 AM on February 24, 1971, and (3) the complaint in *Hughes* alleges repeated requests for medical attention while the complaint before this court only asserts that Fitzke "communicated the need for medical attention" and that "he was denied *requested* medical treatment."

The first two of these factors pertains to the response of the day shift to Fitzke's need for medical care which they perceived and were sensitive to in apparent contrast with the arresting officer

Accordingly, it is our view that the district court erred in relying on the three affidavits filed by the appellees as basis for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. There remain very substantial questions regarding the circumstances surrounding Fitzke's arrest and subsequent incarceration which must be determined in an evidentiary hearing.[10]

Since we find that the allegations of the complaint state a cause of action under 42 U.S.C. § 1983 and that the affidavits filed in support of the motion for summary judgment do not demonstrate the absence of any issue of material fact, it is our view that the judgment of the court below must be reversed and the action remanded to the district court for a hearing on the merits.

The judgment of the district court granting summary judgment for appellees with respect to count 1 is reversed and the action is accordingly remanded for trial on the merits as to that count. The judgment dismissing counts 2 and 3 is affirmed.

---

and the night shift at the jail. As we have made plain, it is the events surrounding appellant's arrest and incarceration throughout the remainder of the night that may be found at trial to constitute a constitutional deprivation. We do not agree that the fact that Fitzke was examined by a doctor some twelve hours after his incarceration distinguishes this case from *Hughes*. Ironically, the action of Kennedy and Eddington tends to cast doubt upon rather than exculpate the appellees, especially those of Shappell, the arresting officer.

Finally, we do not place any great significance upon the failure to allege "repeated requests." The complaint adequately alleges that Fitzke expressed his need for medical attention. Further, we note that it is, of course, true that circumstances, especially after an automobile accident, may be such that a duty to provide medical attention to one arrested arises absent any request for medical care.

10. It is perhaps significant to note that while in their "Answer and Demand for Jury Trial" the appellees asserted that

"the plaintiff was determined to be intoxicated, and not suffering from any physical injuries requiring immediate medical attention," such allegations were not advanced by the evidentiary material filed with the motion for summary judgment. If it can be shown, notwithstanding the circumstances alleged by Fitzke, that he was "not suffering from any physical injuries requiring immediate medical attention," then appellees will prevail.

Further, we note that the case before us illustrates the fallacy of the oft-made assumption that one who is dazed or exhibits the symptoms of drunkenness and who may have alcohol on his breath, or who may in fact be intoxicated, requires the "drunk tank" and not medical attention. Head and internal injuries are often the result of an automobile mishap. Their symptoms may easily be overlooked or mistaken for drunkenness. Thus, the result of a denial of medical assistance coupled with the restraining authority of the state exercised in the form of incarceration may well be that an individual can never again function as a normal person.