**Donald GAGNE, etc., et al., Plaintiffs-Appellees,**

v.

**CITY OF GALVESTON, et al., Defendants,**

and

**Mike Putnal, Defendant-Appellant.**

No. 85–2883.

United States Court of Appeals, Fifth Circuit.

Dec. 9, 1986.

Sewell & Riggs, Barry Abrams, Harvey G. Brown, Jr., Houston, Tex., for defendant-appellant.

Brown, Todd, Hagood & Davenport, Alton C. Todd, Ervin (Trey) August Apffel, III, Alvin, Tex., for plaintiffs-appellees.

Before WISDOM, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

■■ Police officers are entitled to assert the defense of qualified immunity for all acts and omissions that occur in the course of their official duties. In this case, which arose from a jail suicide on May 17, 1983, we hold that the arresting officer was not under a clearly established constitutional duty to discover the prisoner's suicidal tendencies or to deprive him of the means of killing himself. Accordingly, the § 1983 action against the officer must be dismissed.

### I

According to the complaint in this civil rights action, Officer Mike Putnal and another Galveston policeman arrested James Gagne on May 17, 1983, for public intoxication, took him to jail, and booked him. Gagne had scars on one wrist from a prior suicide attempt. Although there was a police department rule or policy requiring that belts be removed from all prisoners during the booking process, Putnal neither removed Gagne's belt nor conducted an investigation that might have uncovered the prisoner's suicidal tendencies. While alone in a cell that night, Gagne used the belt to hang himself. Gagne's estate and survivors sued Putnal and others under 42 U.S.C. § 1983 for having failed to prevent the suicide.

After a number of procedural preliminaries, Putnal filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6). The district court denied the motion. Noting that the law on jail suicide is uncertain in this circuit, the district judge thought that the decedent's constitutional rights might have been violated. Proceeding on that assumption, he stated that he was "not prepared to say that Officer Putnal's conduct constitute[d] an exercise of discretion protected by the judge-made doctrine of qualified immunity." Putnal appeals.[1]

### II

As a police officer, Putnal is entitled to assert the qualified immunity defense. *Saldana v. Garza*, 684 F.2d 1159, 1162, 1163 n. 12 (5th Cir.1982). Under *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir.1985), an eligible defendant's Rule 12(b)(6) motion must be granted unless the plaintiff's complaint states "with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." In order to survive a Rule 12(b)(6) motion, the plaintiff must allege a violation of some federal right that was clearly established at the time of the events in question. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ The plaintiffs argue that Putnal is not entitled to qualified immunity because he was not engaged in a "discretionary act." To support this argument, they contend that there was an unambiguous police department regulation saying, "Belts must be removed from prisoner's clothing and placed in the property bag." The Supreme Court, however, has held that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984) (footnote omitted). Accordingly, the violation of such a departmental regulation could not by itself deprive Putnal of the protection of qualified immunity.

Relying on language in a number of Supreme Court opinions, *e.g.*, *Davis v. Scherer*, 104 S.Ct. at 3021; *Scheuer v. Rhodes*, 416 U.S. 232, 246, 94 S.Ct. 1683, 1691, 40 L.Ed.2d 90 (1974), the plaintiffs contend that the doctrine of qualified immunity applies only when an official acts in "an atmosphere of confusion, ambiguity, and swiftly moving events." Although the Supreme

---

1. The district court's denial of Putnal's 12(b)(6) motion was an appealable final decision within the meaning of 28 U.S.C. § 1291. *See Mitchell*

*v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2815–17, 86 L.Ed.2d 411 (1985).

Court's qualified-immunity opinions have given special attention to the need to avoid inhibiting the ardor of public officials whose positions entail the exercise of discretionary authority, the Court has never implied that the immunity defense is lost when an official is engaged in routine tasks. Indeed, any such suggestion was firmly rejected in footnote 14 of *Davis v. Scherer*, where the Court emphasized that the so-called "ministerial duty" exception to qualified immunity is extremely narrow in scope. 104 S.Ct. at 3021 n. 14. First, "[a] law that fails to specify the *precise* action that the official *must* take in *each* instance creates only discretionary authority." *Id.* (emphasis added) (citation omitted). Thus, if an official is required to exercise his judgment, even if rarely or to a small degree, the Court would apparently not find the official's duty to be ministerial in nature. Second, and perhaps more important, the *Davis* Court stressed that the breach of a ministerial duty "would forfeit official immunity only if that breach *itself* gave rise to the ... cause of action for damages ... [so that the plaintiff] is entitled to damages *simply* because the regulation was violated." *Id.* (emphasis added) (citation omitted). In making this point, the Court referred to footnote 12 of the same opinion, where it was said that "[n]either federal nor state officials lose their immunity by violating the clear command of a statute or regulation—of federal or of state law—unless *that statute or regulation* provides the basis for the cause of action sued upon." *Id.* at 3020 n. 12 (emphasis added). Thus allegations about the breach of a statute or regulation are simply irrelevant to the question of an official's eligibility for qualified immunity in a suit over the deprivation of a constitutional right. This question must be answered solely by an inquiry into whether the constitutional right at issue was clearly established at the time of the events in question.

The only factual allegations against Putnal that are remotely relevant to the claimed deprivation of constitutional rights are that Putnal failed to remove the decedent's belt and that the decedent was not placed under "heightened surveillance" at the jail. The plaintiffs have not cited any case suggesting that a constitutional duty to protect prisoners from self-destructive behavior was clearly established at the time Gagne was arrested. Indeed, the case of *Partridge v. Two Unknown Police Officers*, 791 F.2d 1182 (5th Cir.1986), shows that the possible existence and scope of such a duty has only very recently begun to attract attention in this circuit. Thus, under *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), and *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir.1985), the claim against Putnal must be dismissed.[2]

REVERSED.

WISDOM, Circuit Judge, dissenting:

I respectfully dissent.

The decision of the majority goes too far in protecting police officers who fail to take reasonable precautions to protect detainees.

The poor guy who hanged himself by his belt had been arrested for drunkenness and trespassing. To the police on duty he must have been just another drunk. The Galveston Police Department, however, has a rule requiring that belts be removed from pris-

---

**2.** Judge Wisdom's dissent, able as always, misconceives our holding. The question is whether a rule of *constitutional* law, imposing a duty upon jailers to identify and protect suicidal persons from themselves, was so well-established when James Gagne died as to deny the arresting officer's qualified immunity from damages for his death. The answer to that question is plainly "no" *unless* the violation of a jail rule changes that result. The dissent does not directly attack the primary issue of whether such a constitutionally imposed duty existed, but uses a jail regulation to supply certainty to an uncertain rule of constitutional law. The perverse consequences of attaching constitutional liability to such efforts at self-regulation when no constitutional duty was otherwise clearly established are self-evident. And more to the point for this inferior court, it is not what the Supreme Court has elected to do. Judicial notions of liberty interests may so evolve as to create a clear constitutional standard. But until then, the defense of qualified immunity remains available.

oners during the booking process. This is not an unusual rule. Police departments throughout the country have had the same rule for years. The rule comes from a recognition of the facts of life. It is well known that detainees and other prisoners have suicidal tendencies and must be protected against themselves. To speak of this rule as "discretionary" is to ignore the realities of jailing.

In *Davis v. Scherer,* the Supreme Court did say that "officials ... do not lose their immunity because their conduct violates some statutory or administrative provisions." But the Supreme Court was not talking about something as fundamental to jail supervision and the protection of life as the universal practice of removing a detainee's belt. The Supreme Court in *Davis v. Scherer* dealt with termination of a plaintiff's employment in violation of a state highway patrol regulation requiring an investigation before terminating an employee. Here, the police officer's violation of the unambiguous, mandatory rule of removing a detainee's belt amounted to callous indifference to life.

If this decision stands, it means that no matter how egregiously a police officer ignores or defies a clear, no-exceptions rule, this Court of Appeals will shield him. No matter how negligent, no matter how callously indifferent to proper police conduct a police officer's omissions or commissions may be, this Court will protect him by uttering the magical word "discretionary."

I believe that Congress did not write section 1983 to permit the result the majority reaches in this case. To affirm the dismissal of this case under Rule 12(b)(6) makes it worse.

This case cries for a trial.