Janet M. DANESE, Personal Representative of the Estate of David Danese, Dec'd., Louis Danese, Daniel Danese, Pamela Danese, Margaret Danese, Thomas Danese, Frances Danese and Louis Danese, Ind., Plaintiffs,

v.

Thomas A. ASMAN, Ind. and as Chief of Police for the City of Roseville, et al., Defendants.

Civ. A. No. 84–9797 PH.

United States District Court, E.D. Michigan, S.D.

Sept. 16, 1987.

William G. Povlitz, Petz & Povlitz, Grosse Pointe Woods, Mich., for plaintiffs.

J. Russell LaBarge, Roseville, Mich., for defendants—Officer Kenyon and City of Roseville & Officer Gowsoski.

James R. Goulding, Detroit, Mich., for defendants—Pelt & Hawkins.

John R. Secrest, John H. Cowley, Jr., Farmington Hills, Mich., for defendant City of Roseville.

Thomas E. Spencer, Grand Rapids, Mich., for defendants—Asman, Hill, Peters & Stein.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

This jail suicide action arises from the hanging of David Danese in the Roseville City Jail on November 9, 1982. Plaintiffs, the deceased's father, mother, siblings and estate, originally brought this action under 42 U.S.C. 1983 and 1985.[1]

Originally named as defendants were the City of Roseville, the Roseville Police and Fire Departments, Mayor Riesterer, Chief of Police Asman, Inspector Peters, Ser-

geants Hill and Stein, officers Gowsoski, Churchran, Cardinal and Kenyon, Fire Chief Ireland and Fire Department employees Pelt, Donald Komack, Robert Komack and Hawkins. The Police and Fire Departments, Mayor Reisterer, Chief Ireland, Donald Komack and Robert Komack have been dismissed.[2]

Before the Court are the following motions:

I. The Police and Fire Departments' motion to dismiss.

II. Defendant Reisterer's motion to dismiss.

III. Defendants Asman, Peters, Hill, Stein, Gowsoski, Churchran, Cardinal and Kenyon's motion for summary judgment on the basis of qualified immunity.

IV. Defendants Asman, Peters, Hill, Stein and the City of Roseville's motion for summary judgment and to dismiss plaintiffs' fourteenth amendment claims alleging supervisory and municipal liability for failure to supervise and train Roseville police officers.

V. Defendants Asman, Peters, Hill and Stein's motion for judgment on the pleadings or for summary judgment.

VI. Defendants' motion to dismiss all plaintiffs except Janet Danese as personal representative of the estate of David Danese.

VII. Defendants Pelt and Hawkins' motion for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts as alleged in plaintiffs' complaint are summarized in this Court's memorandum opinion and order issued on May 22, 1987, and need not be recounted in full here. In short, Danese was arrested at approximately 2:50 a.m. on November 9, 1982, by officers Churchran and Gowsoski

---

1. The pendant state claims alleged in the complaint were dismissed in a previous order.

2. Chief Ireland and the Komacks were dismissed by stipulation on September 23, 1986.

The Police and Fire Departments and Mayor Reisterer were dismissed by stipulation on August 18, 1987.

for driving while under the influence of alcohol. The breathalyzer tests administered to Danese by Cardinal resulted in scores of .13% establishing that Danese was legally drunk.

Danese was subsequently placed in a holding cell allegedly secluded from the view of the officers on duty. He was found hanging from the cross bars by his shirt by Cardinal, Kenyon and Stein at 5:56 a.m. The Fire Department's rescue truck arrived at 5:59 a.m. and the ambulance arrived at 6:02 a.m. No life-saving techniques were applied; Danese was pronounced dead at 7:08 a.m. The following claims were alleged by plaintiffs in their first amended complaint:

## SECTION 1983

*Hill, Stein, Cardinal, Churchran, Gowsoski and Kenyon*

1. Failure to provide the deceased with necessary medical care under the eighth and fourteenth amendments; and

2. Failure to follow proper procedures in protecting the deceased from self-injury under the eighth and fourteenth amendments.

*Asman, Peters and Hill*

1. Failing to properly train the police officers and to institute proper procedures for handling detainees who threaten self-injury under the eighth and fourteenth amendments; and

2. False imprisonment and unlawful detention in a defective building under the fourteenth amendment.

*City*

1. Adopting a policy of inadequate training of its officers under the eighth and fourteenth amendments; and

2. Maintaining a policy of systematically violating state regulations governing the physical design of the jail under the fourteenth amendment.

*Pelt and Hawkins*

1. Failure to render any life-saving techniques in violation of the eighth and fourteenth amendments.

## SECTION 1985

1. Conspiracy between Asman and other police officials to preclude inspection of the jail facilities by plaintiff.

*See* Memorandum Opinion and Order, pp. 2–4.

On May 22, 1987, the Court issued a memorandum opinion and order in response to a motion to dismiss filed by the police officers and a motion for summary judgment filed by the Police and Fire Departments, the City and Mayor Reisterer.

The Court dismissed the claims under the eighth amendment because Danese had not been convicted of a crime. With respect to Hill, Stein, Cardinal, Churchran, Gowsoski and Kenyon, the fourteenth amendment claim for failure to provide proper medical assistance was dismissed. Remaining is the fourteenth amendment claim for failing to protect Danese from hanging himself.

With respect to the claims against Asman, Peters and Hill, the inadequate procedures claim was dismissed with leave to amend. Remaining is the fourteenth amendment defective building claim.

The inadequate procedures and defective building claims under the fourteenth amendment remain against the City, as does the claim against Pelt and Hawkins under the fourteenth amendment. The section 1985 claim was dismissed.

**II. REISTERER, POLICE AND FIRE DEPARTMENTS' MOTION TO DISMISS**

The parties having agreed to dismiss each of these three defendants, these motions are DENIED AS MOOT.

III. ASMAN, PETERS, HILL, STEIN, GOWSOSKI, CHURCHRAN, CARDINAL AND KENYON'S MOTION FOR SUMMARY JUDGMENT; ASMAN PETERS, HILL, STEIN AND THE CITY OF ROSEVILLE'S MOTION FOR SUMMARY JUDGMENT AND TO DISMISS; ASMAN, PETERS, HILL AND STEIN'S MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT

In dismissing plaintiffs' inadequate procedures claim against Asman, Peters and Hill, the Court granted plaintiffs ten days to amend their complaint to include factual support for their claim that inadequate police training existed and was the proximate cause of the alleged unconstitutional treatment of Danese. On June 19, 1987, plaintiffs submitted their second amended complaint. On August 4, 1987, the Court vacated its prior order granting leave to amend because the second amended complaint far exceeded the scope intended by the Court in its original order. Plaintiffs were ordered to file a supplement to the original complaint containing any factual support for the inadequate procedures claim. A second amended complaint was properly filed by plaintiffs on August 17, 1987.

Subsequent to the filing of the first of plaintiffs' second amended complaints on June 19, 1987, but prior to the refiling of the second on August 17, 1987, defendants Asman, Peters, Hill, Stein, Gowsoski, Churchran, Cardinal and Kenyon filed their motion for summary judgment. The motion was filed on July 24, 1987. The motion alleges that the June 19 second amended complaint raises new issues not addressed in the first amended complaint. The defendants, however, merely incorporate their previously filed motion, and for the first time rely on *Gagne v. City of Galveston*, 805 F.2d 558 (5th Cir.1986).

Also filed in the interim between June 19 and August 17, was the motion by Asman, Peters, Hill and the City of Roseville. This motion addresses the question of qualified immunity left unresolved by the Court in its opinion as a result of the dismissal of the inadequate procedures claim. This motion was also filed on July 24, 1987. The defendants in both motions have agreed that the motions are equally applicable to the August 17 second amended complaint, even though they were filed prior to the August 17 second amended complaint. Finally, Asman, Peters, Hill and Stein submitted their motion for judgment on the pleadings or for summary judgment on August 24, 1987, through newly substituted attorney Thomas E. Spencer.

Each of these three motions are primarily premised on the defense of qualified immunity. The first and last of the three motions each raise issues already disposed of in the Court's May 22 opinion. Nevertheless, because of the confused nature of the pleadings in this matter and the complexity of the legal issues involved, the Court will reconsider the question of qualified immunity as it pertains to each of the claims against each of the defendants. Reconsideration of the qualified immunity defense will also allow the Court to consider the question of qualified immunity in light of *Anderson v. Creighton*, — U.S. —, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

*Cardinal, Churchran, Gowsoski, Kenyon, Hill and Stein*

Plaintiffs allege that the officers failure to protect Danese from hanging himself constitutes a violation of the due process clause of the fourteenth amendment. The Court previously held that the plaintiffs' claims may arise under two separate aspects of the liberty interest protected by the due process clause. First, a detainee's liberty interest proscribes conditions or restrictions during confinement which amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1871–72, 60 L.Ed.2d 447 (1979). Second, a detainee also has a liberty interest in safe conditions of confinement. *Youngberg v. Romero*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1972). *See also Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677

(Blackmum, J. Dissenting) (1986).[3] It must now be determined whether these two rights the officers are alleged to have violated were "clearly established" at the time of Danese's death.

The Court again begins with the standard set forth by the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982):

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.* at 818, 102 S.Ct. at 2738.

This standard was recently affirmed in *Anderson:* "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738–39; assessed in light of the legal rules that were 'clearly established' at the time it was taken, *id.,* at 818, 102 S.Ct. at 2738." *Anderson,* —— U.S. at ——, 107 S.Ct. at 3038–40.

The Court in *Anderson* also held that the mere assertion of a clearly established right, at least in the context of the fourth amendment, is insufficient to defeat the qualified immunity defense. The Eight Circuit Court of Appeals had rejected the qualified immunity defense finding that the assertion that the general right Anderson was alleged to have violated—the right to be free from warrantless searches of one's home absent probable cause and exigent circumstances—was clearly established.

The majority rejected this general application of the qualified immunity defense: "It simply does not follow from the conclusion that it was fairly established that warrantless searches not supported by probable cause and exigent circumstances violate the Fourth Amendment that Anderson's search was objectively legally unreasonable." *Anderson,* —— U.S. at ——, 107 S.Ct. at 3039.

The Court determined that the right at issue must be more "particularized", and stated the proper question which should be asked in determining the viability of the qualified immunity defense in the context of the fourth amendment:

> The relevant question in this case ... is the objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officer possessed.

*Id.*

Applying the reasoning in *Anderson* to this case, in order to determine whether a reasonable officer could have believed that the failure to take any precautionary measures to protect Danese from injuring himself did not violate the due process clause, both the clearly established law on November 9, 1982, and the information possessed by the officers must be determined.

### A. Liberty Interest in Freedom From Punishment

■ It was recognized as far back as 1972 in this circuit that "fundamental fairness and the most basic conception of due process mandate that medical care be provided to one who is incarcerated and may be suffering from serious illness or injury." *Fitzke v. Shappel,* 468 F.2d 1072, 1076 (6th Cir.1972). The Court in *Fitzke* held that even if the incarceration is merely for the night to "dry out" in the local drunk tank, "where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process." *Id.* (Citations omitted). The "clearly sufficient" standard was affirmed by the Sixth Circuit in *Scharfenberger v. Wingo,* 542 F.2d 328 (6th Cir. 1976).[4]

---

3. Plaintiffs did not allege a procedural process claim. See this Court's previous opinion at p. 18 n. 9.

4. *Scharfenberger* eliminated the contention that the holding in *Fitzke* is inapplicable when the plaintiff's injury is self-inflicted. In *Scharfenberger,* it was unclear whether the amputation

Although *Fitzke* and *Scharfenberger* involved the deprivation of medical care for physiological as opposed to psychological illness, it has long been recognized that the responsibility to provide medical care extends to psychological illnesses. The Fourth Circuit in 1977 held:

In the instant case, petitioner seeks psychological diagnosis and treatment. We see no underlying distinction between the right to medical care for physical ills and its psychological or psychiatric counterpart. Modern science has rejected the notion that mental or emotional disturbances are the products of afflicted souls, hence beyond the purview of counseling, medication and therapy.

*Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir.1977). Other courts have reached the same conclusion. *See, e.g. Campbell v. McGruder*, 580 F.2d 521, 547–550 (D.C.Cir. 1978) (relying on *Fitzke* in support of plan for psychiatric help); *Ruiz v. Estelle*, 503 F.Supp. 1265, 1345 (S.D.Tex.1980); *Cushing v. Tetter*, 478 F.Supp. 960, 968, 969 (D.R.I.1979) (return of plaintiff to former military unit would display deliberate indifference because it would create a risk of suicide).[5]

The "clearly sufficient" standard applied to psychological illnesses was not altered by the Supreme Court's decision in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), or *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The deliberate indifference standard enunciated in *Estelle* is applicable to the eighth amendment rights of an individual convicted of a crime. The eighth amendment, and thus the "deliberate indifference" standard is inapplicable to a detainee not convicted of a crime. *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89

L.Ed.2d 251 (1986). The Fifth Circuit, in *Jones v. Diamond*, 636 F.2d 1364, 1378 (5th Cir.), *cert. dismissed sub nom., Ledbetter v. Jones*, 453 U.S. 911, 101 S.Ct. 3141, 69 L.Ed.2d 993 (1981), recognized that "the standard by which to measure the medical attention that must be afforded pretrial detainees have never been spelled out." *Id.*

At the very least, it was clearly established after *Estelle* that the deprivation of a detainee's need for medical attention was actionable under the due process clause if the deprivation was a result of deliberate indifference on the part of a government official. It has long been recognized that detainees, not yet convicted of any crimes, retain at least those constitutional rights enjoyed by convicted prisoners. *Wolfish*, 441 U.S. at 545, 99 S.Ct. at 1877. Indeed, some courts, including the Fifth Circuit in *Diamond*, 636 F.2d at 1368, have concluded that the due process clause accords pretrial detainees rights not enjoyed by convicted inmates. *Id. See also Cudnick v. Kreiger*, 392 F.Supp. 305, 300–311 (N.D. Ohio 1974).

Although *Wolfish* established an analytical framework for determining when a detainee's liberty interest under the due process clause is infringed by the conditions of confinement, nothing in that decision alters the "clearly sufficient" standard espoused by *Fitzke* and *Scharfenberger*. Although it may have been unclear exactly how the end result of application of the *Wolfish* analysis to the question of medical attention would compare to the "clearly sufficient" or "deliberate indifference" standards, *see, e.g., Hamm v. DeKalb County*, 774 F.2d 1567, 1572–1574 (11th Cir.1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986); *Roberts*

of the plaintiff's right arm was necessitated by an improper injection by infirmary staff or by the plaintiff himself. The court held:

"Defendants expend considerable effort seeking to prove that Scharfenberger injured himself. We regard this issue as irrelevant because a prisoner's custodians cannot lawfully deny him adequate medical care even in instances of deliberate self injury."

*Id.* at 330. This holding was followed in *Matje v. Leis*, 571 F.Supp. 918, 930 (S.D.Ohio 1983), a

jail suicide involving facts similar to those present in this case.

5. That each of these cases involved convicted prisoners as opposed to mere detainees is irrelevant in light of the Supreme Court's teaching that those not convicted of a crime possess at least as many rights under the due process clause that one convicted of a crime possesses under the eighth amendment.

*v. City of Troy,* 773 F.2d 720 (6th Cir.1985) (*en banc*); only the degree of intent, and not the right itself has been anything but clearly established. In accordance with the teaching in *Wolfish* itself, a detainee is entitled to at least the protection offered under *Estelle.* The only question left by *Wolfish* was whether the more plaintiff-oriented "sufficiently clear" standard or the "deliberate indifference" standard would result from application of the *Wolfish* analysis.

In sum, at the time of Danese's hanging on November 9, 1982, it was clearly established that the due process clause at least proscribed a governmental official from denying a detainee medical attention for psychological illnesses where that denial is a result of deliberate indifference.[6] That the very action or lack of action in question—here the failure to take precautionary steps to protect Danese from injuring himself—has not been previously held unlawful is not dispositive. The unlawfulness must only be apparent in light of preexisting law. *Anderson,* —— U.S. at ——, 107 S.Ct. at 3038–40.

*Gagne v. City of Galveston,* 805 F.2d 558 (5th Cir.1986), *cert. denied sub nom., Gagne v. Putnam,* —— U.S. ——, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987), does not alter this conclusion. In *Gagne,* the Fifth Circuit reversed the district court's denial of the arresting officers' motion to dismiss based on qualified immunity. In holding that the officer was under no clearly established constitutional duty to discover the prisoner's suicidal tendencies or to deprive him of the means of killing himself, the court cited the lack of authority for such a duty. The court also pointed out that the possible existence of such a duty was only recently raised in the Fifth Circuit in *Partridge v. Two Unknown Police Officers,* 791 F.2d 1182 (5th Cir.1986) (*en banc*).

*Gagne* is inapplicable for two reasons. First, as plaintiffs point out, it is factually distinguishable. *Gagne* made no threats or references to suicide or otherwise gave the officers reason to believe that he might contemplate suicide. More importantly, however, the court in *Gagne* explicitly limited its discussion to Fifth Circuit precedent. *Gagne* failed to take into account the decisions discussed above, and dismissed the claim in a conclusory fashion.

Having determined the clearly established law at the time of Danese's death, the officers knowledge of Danese's propensity to commit suicide must be ascertained.[7] Because the qualified immunity issue has been raised by defendants under both Rule 12 and Rule 56, the Court will address the issue under both rules.

Under Rule 12(b)(6), the facts alleged in the complaint must be accepted as true. *Nishiyama v. Dickson County,* 814 F.2d 277, 279 (6th Cir.1987). As the Court's previous opinion indicates on pp. 15–16,

---

6. Plaintiffs contend that the rules promulgated by the Michigan Department of Corrections relative to jails and lockups create a liberty interest under the fourteenth amendment. Except in the context of a procedural due process claim, which has not been alleged here, this simply is not so. *Davis v. Scherer,* 468 U.S. 183, 193 n. 11, 104 S.Ct. 3012, 3018 n. 11, 82 L.Ed.2d 139 (1984). *See also Gagne,* 805 F.2d at 560 n. 2.

Allegations regarding the breach of a statute or regulation, however, may not be completely irrelevant to an official's eligibility for qualified immunity, or if qualified immunity is inapplicable, to the question of liability itself. Violation of state statutes or regulations could conceivably be indicative of a violation of a constitutional right, where as here, the central issue is whether the officers acted with deliberate indifference. *Cf. Gagne,* 805 F.2d at 560. Because the Court has determined that the qualified immunity defense is not applicable based on the conduct of Danese himself, the Court need not consider whether the officers' alleged failure to follow the regulations also portrayed deliberate indifference to Danese.

7. Justice Scalia, writing for five other members of the Court, emphasized in *Anderson* that determination of the information possessed by a searching officer does not reintroduce into the analysis an inquiry into the officials subjective intent. *Anderson* nevertheless recognizes that determination of an officer's knowledge does involve a question of fact, just as *Mitchell* recognizes that whether the officer actually committed the alleged unlawful act is a question of fact. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985). The applicable standard by which these facts are determined depends, of course, on whether the defense is raised in the context of a motion to dismiss under F.R.Civ.P. 12(b)(6) or for summary judgment under F.R.Civ.P. 56.

plaintiffs sufficiently pleaded a violation of clearly established law within the context of a motion to dismiss. The complaint alleges conduct sufficient to put a reasonable officer on notice of Danese's suicidal tendencies such that the failure to act would constitute deliberate indifference.

■ The fact that plaintiffs' complaint adequately states a claim of clearly established law does not end the inquiry, however. A motion for summary judgment may still be appropriate. "Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2816. Whether defendants committed the alleged unlawful actions, at least in the traditional sense, is not at issue here. Rather, the question of fact which might have been resolved through discovery in this matter is the extent to which Danese had warned the officers that he might commit suicide.

In ruling on a motion for summary judgment, the Court need not accept the allegations as true, but must merely construe the evidence and the reasonable inferences therefrom in the light most favorable to the nonmoving party. *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979). Even viewed under this more lenient standard, the Court believes that at the very least there is a genuine issue of fact as to the tone and nature of Danese's conduct in general. Most of plaintiffs' allegations regarding Danese's conduct are not in dispute. Nevertheless, without the benefit of the relevant testimony, other conduct by Danese alleged by defendants does cast into doubt the overall demeanor of Danese and his conduct as alleged by plaintiffs. For these reasons, the officers claim of qualified immunity relative to this aspect of the due process claim must be denied.

B. Liberty Interest In Personal Security

The parties have not challenged the Court's previous holding that the qualified immunity defense is inapplicable to plaintiffs' due process claim under *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), and *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed. 2d 28 (1982). Accordingly, for the reasons expressed in pp. 17–18 and 26 of the May 22 Memorandum Opinion and Order, the officers' qualified immunity defense relevant to this aspect of the due process clause also fails.

*Asman, Peters, Hill & Stein*

Plaintiffs allege both a supervisory, as well as a direct claim against defendants Asman, Peters, Hill and Stein.

A. Inadequate Training and
Procedures Claim

■ Plaintiffs allege in their second amended complaint that the four supervisory officers failed to provide any training or establish any procedures regarding intake screening and suicide precautions. Plaintiffs allege that the failure to provide any training or establish any procedures in light of a past suicide in 1977 and repeated offers by state officials to train Roseville police officers constitutes deliberate indifference and gross negligence.

Assuming the facts alleged by plaintiffs to be true, the complaint adequately states a claim of a violation of a clearly established law. The relevant standard regarding supervisory liability in a section 1983 action is discussed at pp. 19–20 in the May 22 Memorandum Opinion and Order. In short, *Hays v. Jefferson County*, 668 F.2d 869 (6th Cir.), *cert. denied*, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982), requires a finding of extreme recklessness or gross negligence in training in order to sustain a claim of supervisory liability under section 1983. *Id.* at 874. There must also exist a causal relationship between the failure to train and the conduct of the police officers. *Rizzo v. Goode*, 423 U.S. 362, 370–371, 96 S.Ct. 598, 603–04, 46 L.Ed.2d 561 (1976).

The law established in *Rizzo* and *Hays* was clearly established in November 1982. *Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 decided in January 1982. *See also Scott v. deLeon*, 603 F.Supp. 1328, 1333–1334 (E.D. Mich.1985). The facts alleged in plaintiffs'

complaint, if taken as true, adequately state a claim of gross negligence. Additionally, the alleged conduct could easily be construed as the moving force behind the deprivation of Danese's liberty interest.

■ Defendants' qualified immunity defense also fails if considered in the context of a motion for summary judgment. On p. 32 of its previous opinion, this Court set forth the questions of fact still remaining which preclude the Court from granting a motion for summary judgment on behalf of the City. These issues of fact are also present with respect to Asman, Peters, Hill and Stein, and foreclose the granting of summary judgment on this issue.

2. Defective Building Claim

The Court's previous analysis of this claim on pp. 21–23 and 26 is unchallenged and remains applicable. Qualified immunity is not applicable.

*City of Roseville*

On pp. 28–33 the Court provided a lengthy discussion of the principles of municipal liability and concluded that questions of fact remain for trial in both the inadequate training and procedures and defective building claims. Nothing in the City's renewed motion persuades the Court to change its previous decision.

IV. DEFENDANTS' MOTION TO DISMISS ALL PLAINTIFFS EXCEPT JANET DANESE AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DAVID DANESE

■ Defendants first contend that Danese's parents and siblings lack standing to sue since they fail to allege in the complaint the deprivation of a constitutional right personal to themselves. It is beyond dispute that plaintiffs may only recover for deprivation of their own constitutional rights and not the rights of David. *See, e.g., Trejo v. Wattles,* 636 F.Supp. 992 (D.Colo.1985). A failure to assert a personal constitutional injury would result in a lack of standing. *Trujillo v. Bd. of City Comm. of City of Santa Fe,* 768 F.2d 1186, 1187 (10th Cir.1985).

Plaintiffs do not dispute the omission of allegations of direct injury, but argue that they should be permitted to amend the complaint and allege the deprivation of their liberty interest in familial relationships. The Sixth Circuit recently stated the applicable standards a district court must apply in determining whether to grant leave to amend:

Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend "shall be freely given when justice so requires." The district court also abuses its discretion in not granting leave to amend unless there is some apparent or declared reason not to allow the amendment. *Foman v. Davis,* 371 U.S. 178, 187, 88 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Marx v. Centran Corp.,* 747 F.2d 1536, 1550 (6th Cir.1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985). Such reasons may include undue delay, bad faith or dilatory motives by the movant, undue prejudice to the opposing party by allowing the amendment, or futility of amendment. 371 U.S. at 182, 83 S.Ct. at 230.

*Consumers Petroleum Co. v. Texaco, Inc.,* 804 F.2d 907, 913 (6th Cir.1986). *See also Janikowski v. Bendix Corp.,* 823 F.2d 945, 951 (6th Cir.1987).

■ In this case, plaintiffs are not guilty of undue delay, bad faith or dilatory motives. Additionally, defendants would not be unduly prejudiced by allowing such an amendment. Such an amendment will not delay trial. Finally, whether leave to amend would be futile leads to defendants' other argument—that no such constitutional right exists. Because the Court concludes that a liberty interest in familial relationships does exist under the due process clause of the fourteenth amendment, plaintiffs are entitled to amend their complaint accordingly.

The Supreme Court has never directly considered whether family members have a liberty interest in the continued life of a relative. In two cases in which the issue might have been addressed, the Court dismissed certiorari as improvidently granted. *See Jones v. Hildebrant,* 191 Colo. 1, 550

P.2d 339 (1976), *cert. dismissed,* 432 U.S. 183, 97 S.Ct. 2283, 53 L.Ed.2d 209 (1977); *Espinoza v. O'Dell,* 633 P.2d 455 (Colo. 1981), *cert. dismissed,* 456 U.S. 430, 102 S.Ct. 1865, 72 L.Ed.2d 237 (1982).

The Supreme Court has, however, recently clarified the right to enter into and maintain intimate or private relationships in *Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), and *Bd. of Dir. of Rotary Int'l v. Rotary Club of Duarte,* ——— U.S. ———, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987). In *Roberts,* the Court upheld against first amendment challenge application of the Minnesota Human Rights Act to compel the Jaycees to accept women as regular members. The Court's analysis in *Roberts* was summarized in *Rotary Club:*

> As we observed in *Roberts,* our cases have afforded constitutional protection to freedom of association in two distinct senses. First, the Court has held that the Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships. Second, the Court has upheld the freedom of individuals to associate for the purpose of engaging in protected speech or religious activities. In many cases, government interference with one form of protected association will also burden the other form of association. In *Roberts* we determined the nature and degree of constitutional protection by considering separately the effect of the challenged state action on individuals' freedom of private association and their freedom of expressive association.

*Rotary Club,* ——— U.S. at ———, 107 S.Ct. at 1945.

In *Rotary Club,* the issue before the Court was whether a California statute requiring California Rotary Clubs to admit women members violated the first amendment. The Court applied the two-fold inquiry developed in *Roberts* and held there was no first amendment violation. Only the freedom of intimate association is at issue in this case.

The Court in *Rotary Club* described the freedom of intimate association as follows:

> [T]he freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights. Such relationships may take various forms, including the most intimate. *See Moore v. East Cleveland,* 431 U.S. 494, 503–504 [97 S.Ct. 1932, 1937–1938, 52 L.Ed.2d 531] (1977) (plurality opinion). We have not attempted to mark the precise boundaries of this type of constitutional protection. The intimate relationships to which we have accorded constitutional protection include marriage. *Zablocki v. Redhail,* 434 U.S. 374, 383–386 [98 S.Ct. 673, 679–81, 54 L.Ed.2d 618] (1978); the begetting and bearing of children, *Carey v. Population Services International,* 431 U.S. 678, 684–686 [97 S.Ct. 2010, 2015–2016, 52 L.Ed.2d 675] (1977); child rearing and education, *Pierce v. Society of Sisters,* 268 U.S. 510, 534–535 [45 S.Ct. 571, 573–574, 69 L.Ed. 1070] (1925); and cohabitation with relatives, *Moore v. East Cleveland, supra,* at 503–504 [97 S.Ct. at 1937–38]. Of course, we have not held that constitutional protection is restricted to relationships among family members. We have emphasized that the First Amendment protects these relationships, including family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.' *Roberts v. United States Jaycees, supra,* at 619–620 [104 S.Ct. at 3250].

*Id.*

The Court then described the proper analysis for determining whether constitutional protection is warranted:

> [I]n *Roberts* we observed that '[d]etermining the limits of state authority over an individual's freedom to enter into a particular association ... unavoidably entails a careful assessment of where that relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of

personal attachments.' 468 U.S. at 620, 104 S.Ct. at 3251 (citing *Runyon v. McCrary*, 427 U.S. 160, 187–189 [96 S.Ct. 2586, 2602–2604, 49 L.Ed.2d 415] (1976) (Powell, J., concurring)). In determining whether a particular association is sufficiently personal or private to warrant constitutional protection, we consider factors such as size, purpose, selectivity, and whether others are excluded from critical aspects of the relationship. 468 U.S., at 620 [104 S.Ct. at 3250].

*Id.*

In *Trujillo*, the Tenth Circuit held that the mother and daughter of the deceased had a constitutionally protected interest in their relationship with their son and brother. *Trujillo*, 760 F.2d at 1184. The court concluded that the parental and sibling relationship was well within the protected range described in *Jaycees*.

We note that the familial relationships in this case do not form the outer limits of protected intimate relationships. As the Court in *Jaycees* further explained, 'a broad range of human relationships ... may make greater or lesser claims to constitutional protection ...,' requiring 'a careful assessment of where [a particular] relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments.' 104 S.Ct. at 3251. Those characteristics which would indicate a protected association include smallness, selectivity, and seclusion. *Id.* at 3250. We need not make such an assessment here, since the relationships at issue clearly fall within the protected range.

*Id.* at 1189 n. 5.

The reasoning in *Trujillo* is applicable to this case, especially in light of the Supreme Court's recent affirmation of *Jaycees* in *Rotary Club*.

Although some courts have rejected the existence of such a constitutional right with respect to both parents and siblings,

see, *e.g., Ortiz v. Burgos*, 807 F.2d 6, (1st Cir.1986), and others with respect to just siblings, *see, e.g., Bell v. City of Milwaukee*, 746 F.2d 1205, 1242–48 (7th Cir.1984), none of these decisions consider the *Jaycees-Rotary Club* analysis.[8]

Plaintiffs are accordingly entitled to amend their complaint to allege deprivation of each's constitutional right of intimate association with Danese. These allegations are to be included as Count XI and shall not exceed three pages. Former Count XI shall be changed to Count XII.

**V. DEFENDANTS' PELT AND HAWKINS' MOTION FOR SUMMARY JUDGMENT**

Defendants contend that summary judgment is appropriate for two reasons. First, Pelt and Hawkins assert that because the acts complained of were *ultra vires* and thus not within the scope of their municipal position, they were not acting "under color of any statute, ordinance, regulation, custom or usage of any State...." Defendants rely on *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), in support of this argument.

This first argument suffers from two basic flaws. First, a municipal custom or policy need only be proved if the defendant is a municipality or local government. It is irrelevant when the defendants, as in the case here, are only employees.

It is true that in order to establish a violation under section 1983, one of the elements which must be proved is that the defendants were acting under color of state law when they committed the alleged unconstitutional act. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Defendants' argument that these acts were *ultra vires* and thus not under color of state law, however, was rejected in the seminal case of *Monroe v. Pape*, 365

**8.** Both the Ninth and Eighth Circuits have upheld a parent's right of intimate association in these circumstances. *Kelson v. City of Springfield*, 767 F.2d 651 (9th Cir.1985); *Mattis v. Schnarr*, 502 F.2d 588 (8th Cir.1974). Neither decision was based upon the principles enunciated in *Jaycees* and *Rotary Club*.

U.S. 167, 171–87, 81 S.Ct. 473, 475–84, 5 L.Ed.2d 492 (1961).

Second, defendants contend that gross negligence is insufficient to trigger the protection of the due process clause; alternatively they argue that the acts alleged by plaintiffs do not rise to the level of gross negligence.

As this Court recognized on pp. 34–36 of its previous opinion, the only possible claim against Pelt and Hawkins is under the substantive aspect of the due process clause. Although it is true that the Supreme Court has explicitly stated that allegations of mere negligence are insufficient to state a claim under the due process clause, the Court specifically reserved the question whether "something less than intentional conduct, such as reckless or 'gross negligence', is enough to trigger the protection of the Due Process Clause." *Daniels v. Williams*, 474 U.S. 327 n. 7, 106 S.Ct. 662 n. 7, 88 L.Ed.2d 662 (1986). In *Nishiyama*, 814 F.2d at 281–83, the Sixth Circuit held that gross negligence is sufficient to constitute a "deprivation" of due process. The gross negligence standard under *Nishiyama* is thus applicable.

Applying the gross negligence standard, defendants have failed to carry the burden of proving that no issue of fact remains relative to whether their conduct was in accord with state procedure or was merely negligent. The Court is unable to say, without knowledge of the proper procedures which should have been followed in attending to Danese, that Pelt and Hawkins' actions do not rise to the level of gross negligence.

Accordingly, defendants' motion is DENIED.

IT IS SO ORDERED.