Hugo RAMIREZ, M.D., Plaintiff–Appellee,

v.

Suzanne AHN, M.D., et al., Defendants–Appellants.

No. 87–6245.

United States Court of Appeals, Fifth Circuit.

May 3, 1988.

---

Lauri J. Schneidau, Sedora Jefferson, James C. Todd, Asst. Attys. Gen., Austin, Tex., for defendants-appellants.

Marian D. Rosen, Houston, Tex., for plaintiff-appellee.

Before VAN GRAAFEILAND,[*] JOHNSON and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Dr. Hugo Ramirez, an obstetrician and gynecologist licensed and practicing in the state of Texas, brought suit against the Texas Board of Examiners under 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988, for revoking his license in violation of his constitutional rights. The district court vacated the Board's decision on grounds that the Board denied Ramirez's procedural due process rights. The Texas Board of Examiners now appeals that decision. Because it is clear that any procedural errors in the Board's administrative proceedings constituted, at worst, violations of state law only and did not amount to constitutional violations, we reverse the district court and reinstate the Board's revocation.

I

Dr. Hugo Ramirez is licensed as an obstetrician and gynecologist in the state of Texas. Recently, Dr. Ramirez began peforming liposuction surgery, a process by which fat is surgically removed from pa-

---

[*] Circuit Judge of the Second Circuit, sitting by designation.

tients. On September 24, 1986, the defendants, members of the Texas Medical Board of Examiners ("the Board"), received a letter of complaint concerning Dr. Ramirez, and opened an investigation, which was accelerated when two individuals became critically ill following liposuctions performed by him. On April 3, 1987, after an investigation and hearing, an executive committee of the Board temporarily suspended Dr. Ramirez's medical license. Ramirez immediately filed suit in federal court, seeking a preliminary injunction to prevent enforcement of the executive committee's order. The district court partially reinstated Ramirez's license pending a full hearing and final decision by the Board, but restricted Ramirez's practice by prohibiting his performing liposuction or doing any more than assist in surgery.

After the initial hearing, an independent hearing examiner was appointed. The examiner conducted a six-day hearing in which both sides were given an opportunity to present evidence and cross-examine witnesses. Dr. Ramirez did not testify in his own behalf. After considering testimony from patients and expert witnesses and examining the records of the hospital where Ramirez performed several surgeries, the examiner concluded that with regard to all seven patients studied Ramirez had engaged in unprofessional conduct likely to injure the public, and that the treatment he administered was nontherapeutic with respect to at least five of the seven. Because the examiner found that these procedures, which resulted in three deaths and three cases of serious complications within three years, constituted "grotesque deviations from minimum standards of care," he recommended that Dr. Ramirez's license to practice medicine be permanently revoked.

On July 24, 1987, the examiner submitted findings of fact and recommendations to the Board at its regularly scheduled meeting. The meeting lasted three hours. In addition to the examiner's presentation, the Board considered the proposed findings submitted by Dr. Ramirez and the Board's staff, the transcript testimony of one liposuction patient and hospital records. The Board, however, did not review the investigation file or the transcript of the six-day hearing. On the basis of the testimony and documents submitted at the meeting, the Board made its own findings of fact and conclusions of law, and revoked Ramirez's medical license. The Board ruled that Dr. Ramirez's lack of good medical judgment and deviation from standard medical practice, as evidenced by his misjudgment during liposuction surgery, justified the revocation of his license.

Ramirez again applied for preliminary injunctive relief, and on August 14, 1987, the district court again reinstated Ramirez's license, restricted as before by the prohibition against performing liposuction surgery. After a trial on the merits, the district court vacated the Board's decision on the basis that the Board had denied Ramirez procedural due process. Specifically, the district court in a bench ruling noted: (1) the president of the Board improperly held the office because he had not been duly elected but, as former vice president, had succeeded to office upon the president's resignation; (2) the executive committee was not properly constituted because several members were appointed by the president rather than elected under the by-laws; (3) the hearing examiner's appointment was ineffective because it was made by the invalidly appointed president; (4) the Board's findings may have been based on information that had not been admitted into evidence; and (5) when it reviewed the proceeding, the Board did not have available the transcript of the six-day hearing. The district court also viewed with scepticism the Board's complaint procedure and the documents upon which the Board initiated its investigation, noting that they may well have been based on rumors and hearsay, spurred by jealousy and competition within the practice, rather than on any concrete information or evidence. The district court therefore held that the Board's hearing was invalid and vacated its decision. Ironically, however, after invalidating the *Board's* entire order for lack of procedural due process, the district court fashioned its own revocation order, *sua sponte*, prohibiting liposuction

surgery by Dr. Ramirez, apparently with no process, due or otherwise. The district court did not explain its self-devised remedy that seems ironically to have ignored the very constitutional principles that prompted it to overturn the Board's decision.

## II

The due process clause requires that any deprivation of life, liberty or property "be preceded by notice and an opportunity for hearing appropriate to the nature of the case." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950)). It is well established that a reasonable, continued expectation of entitlement to a previously acquired benefit, such as a medical license, constitutes a cognizable property interest for purposes of due process protection. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579, 92 S.Ct. 2701, 2710, 33 L.Ed.2d 548 (1972). The question here, then, is a very narrow one. Because "[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies," *Bishop v. Wood*, 426 U.S. 341, 349, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976), much less decisions based on considered professional evaluations, our review is limited to whether the notice and hearing, provided by an appropriate tribunal, were adequate to protect Ramirez's legitimate property interests.

■ In Dr. Ramirez's case, three separate proceedings occurred: first, by the executive committee prior to the temporary injunction; then by the hearing examiner; and, finally, at the regular meeting of the Board prior to the revocation of Dr. Ramirez's license. The district court held that procedural due process errors occurred at each stage. At this juncture we will concern ourselves only with those errors that might affect the final permanent revocation hearing. Although it is less than clear to us, we will assume that the Board may

have violated its own internal rules at certain times. However, as this court has previously determined, even if an action by a government entity violates its own rules or those of the state, there is no *constitutional* deprivation unless the conduct also trespasses on federal constitutional safeguards. *Franceski v. Plaquemines Parish School Board*, 772 F.2d 197, 200 (5th Cir.1985). As long as an individual receives notice and a hearing that satisfies federal due process, any violations of state law are completely irrelevant to constitutional analysis. After examination of each of the three proceedings, it is manifest that there is no violation here of constitutional dimension.

### A.

■ The district court strangely held that because Dr. Hilliard succeeded to the office of president rather than being elected, his presidency was invalid for purposes of the United States Constitution. Because only the president is authorized to appoint Board members, the court concluded that Dr. Hilliard's appointment of Ms. Jenkins to the Board was also invalid. Thus the court concluded that the appointments of two Board members who suspended Dr. Ramirez's license at this hearing were invalid.

Even if the Board's actions were not authorized by the express words of the Texas Medical Practice Act, this failure did not constitute an error that should have concerned the district court. "There is not a violation of due process every time a university or other government entity violates its own rules." *Franceski*, 772 F.2d at 200. The question that must be answered here is whether the failure to follow the Texas rules denied Dr. Ramirez his constitutional right to notice and an opportunity to be heard. It obviously did not. It is indisputable that Dr. Ramirez was given advance written notice of the hearing and that at the hearing he was allowed to testify and bring his own evidence. The requirements of the Constitution were therefore fully satisfied, regardless of whether

the procedures technically complied with the Texas Medical Practice Act.

 Nevertheless, Dr. Ramirez argues that the notice and opportunity given were not "meaningful" because the notice given described a hearing with regard to liposuction procedure not Dr. Ramirez's license generally, and therefore violated his rights for all "practical purposes." We are not sure we understand this vaguely stated argument. We note, however, that the Constitution does require procedure at that level which is appropriate to the nature of the case. *See Mullane*, 339 U.S. at 313, 70 S.Ct. at 656–57. "The formality and procedural requisites for the hearing can vary depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Cleveland Board of Education*, 470 U.S. at 545, 105 S.Ct. at 1495 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)). The standard to which the administrative body must be held depends upon the balancing of the individual's property interest against the governmental interest in efficient administration. *See Cleveland Board of Education*, 470 U.S. at 543, 105 S.Ct. at 1493–94. The dangers to public and safety and health in this case required immediate attention and were more than offset by the level of notice and opportunity to be heard given here.[1]

### B.

 Next, the district court was apparently concerned that the independent hearing given by the hearing examiner was invalid because the examiner's appointment (made by Dr. Hilliard) was itself invalid because Dr. Hilliard did not hold his office according to the rules of the TMPA. Once again, however, as a federal court we are not concerned with possible violations of internal rules. "The federal court's only function in such a case is to decide the merits of plaintiff's constitutional claims."

*Megill v. Board of Regents*, 541 F.2d 1073, 1077 (5th Cir.1976). Our concern is with adequate notice and opportunity to be heard by an appropriate tribunal, appropriately competent and impartial for the particular determination to be made, all of which Dr. Ramirez certainly received. The hearing examiner conducted an independent, impartial and thorough investigation of the charges made. He based his findings of fact and recommendations upon the testimony of witnesses and patients as well as medical records and statements from Dr. Ramirez himself. There is thus no question that, under the circumstances, this procedure satisfied all constitutional due process requirements.

### C.

 The district court found several grounds upon which to hold that the Board's decisional method violated due process. First, the court noted that the Board made statements regarding information that was not properly admitted into evidence. On appeal, Dr. Ramirez contends that the Board found that he had acted negligently with regard to several patients whose testimony had not been admitted at the proceeding before the Board. The district court also noted that a transcript of the six-day hearing conducted by the independent hearing examiner was not available to the Board during its permanent revocation hearing. The Board did rely, however, upon the findings and recommendations of the hearing examiner, the proposed findings submitted by Dr. Ramirez, as well as the Board's own staff. Further, Dr. Ramirez was represented at this meeting by counsel, and was given the opportunity to present and cross-examine witnesses. The Board also relied upon Dr. Ramirez's own hospital records. Upon this evidence, there can be no doubt that the Board was able to exercise properly its judgment to revoke Ramirez's license in accordance with due process.

---

1. Furthermore, we address this issue only because we assume that, as the district court held, the composition of the Board was invalid and that this invalidity affected *both* the initial suspension and final vote. It appears from the record that the meeting of the full Board was valid under the TMPA, in which case any error in the initial adjudication was overcome by the final vote.

■ We emphasize, as we have before, that the Constitution does not mandate error-free decision making. *McCrae v. Hankins,* 720 F.2d 863, 868 (5th Cir.1983). Nor does the Constitution require "that each Board member individually inspect every line of the record as compiled by the Board and the hearing examiner. Neither is there a prohibition against delegating to some Board members the responsibility of reviewing the record." *Megill,* 541 F.2d at 1080. Instead, the Constitution requires adequate notice and an opportunity to be heard by an appropriate tribunal. That process must balance the individual's property interest and the risk of erroneous deprivation of that interest against the government's interest in maintaining quality medical care and the probable value of additional procedural safeguards. *See Cleveland v. Loudermill,* 470 U.S. at 543, 105 S.Ct. at 1493–94. These requirements were all satisfied by the Board during its final hearing.

### III

We cannot overemphasize the limited role of federal courts in reviewing decisions such as this which are made by an agency of the state exercising its police powers as mandated by the Constitution. It is the duty of the Texas Board of Medical Examiners to protect the public from individuals who may endanger public health and safety through their practice of medicine. A federal court has no business intruding upon the substantive decisions of a public institution by substituting its judgment for that of the public body. This is especially true in cases where the public safety is so clearly at risk as it is here. Dr. Ramirez's activities put individuals in critical danger and led to three deaths. Clearly doctors are in a better position to judge whether such a member of their profession should be allowed to continue to practice in the profession.

■ As federal judges we are not required to determine whether Dr. Ramirez's hearing was letter perfect or the best that it could have been. Instead, we are required only to insure that Ramirez has received procedural due process as re-

quired under the United States Constitution. This due process he has most clearly received. Because only deprivations without constitutional due process are actionable under 42 U.S.C. §§ 1983, *et seq., Phillips v. Vandygriff,* 711 F.2d 1217, 1222 (5th Cir.1983), *cert. denied,* 469 U.S. 821, 105 S.Ct. 94, 83 L.Ed.2d 40 (1984), Dr. Ramirez has no viable claim.

The judgment of the district court is therefore

REVERSED.

JOHNSON, Circuit Judge, specially concurring:

I concur in the result Judge JOLLY has reached in his opinion.