**Eleno VEGA Sr., et al., Plaintiffs,**

v.

**J.C. PARSLEY, et al., Defendants.**

**No. SA 84 CA 1761.**

United States District Court,
W.D. Texas,
San Antonio Division.

Aug. 12, 1988.

Hector Leal, Laredo, Tex., for plaintiffs.

James Ludlum, Jr., Austin, Tex., for defendants.

## MEMORANDUM ORDER

GARZA, District Judge.

On this day came on before the Court the Defendants' Motion for Summary Judgment. This suit is based on the death of Plaintiffs' thirteen year old son who was found hanging in the Gonzales County Detention Facility on March 2, 1983. Plaintiffs, surviving parents of the decedent, Eleno Vega, Jr., have brought this action

under 42 U.S.C. § 1983, alleging violations of the Eighth and Fourteenth Amendments to the United States Constitution; they have also asserted certain pendent state claims. Defendants are the Gonzales County Sheriff (Parsley), the Director of the Gonzales County Juvenile Detention Facility (Gunby), and the County of Gonzales, Texas.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment:

shall be rendered ... if ... the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the summary judgment record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case. *See id.* 106 S.Ct. at 2554. The moving party is not required, however, to negate the opponent's claim. *See id.* at 2553.

Once the movant has discharged its burden of showing that there is not a genuine issue of fact, the non-movant is not thereby relieved of its own burden of producing in turn evidence that would support a jury verdict. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); FED.R.CIV.P. 56(e). The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *See id.* Rule 56(e) permits a proper

summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves. *Celotex Corp.*, 106 S.Ct. at 2554.

If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party. FED.R.CIV.P. 56(e) (emphasis added). Here, plaintiffs have totally failed to file any pleadings or affidavits opposing defendants' motion for summary judgment.[1] Where a non-movant makes no opposition to a summary judgment motion, the Court may grant judgment if movant makes a *prima facie* showing of its entitlement to judgment. *Eversley v. MBank of Dallas*, 843 F.2d 172, 174 (5th Cir.1988). Nonetheless, the Court must determine:

... not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry therefore, unavoidably asks whether the reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon which the *onus* of proof is imposed."

*Anderson*, 106 S.Ct. at 2512.

In accordance with these standards, the Court finds that defendants' motion for summary judgment on all § 1983 claims should be granted. This Court, however, chooses not to exercise its jurisdiction over the remaining pendent state claims and therefore is of the opinion that they should be dismissed without prejudice. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Corwin*

---

1. Plaintiffs filed a pleading entitled Plaintiffs' Response to Defendant County of Gonzales' Motion to Dismiss, but no pleading or affidavit in opposition to Motion of Defendants for Summary Judgment.

v. *Marney, Orton Investments*, 843 F.2d 194, 200 (5th Cir.1988).

## I.

### Background

On October 21, 1982, Eleno Vega, Jr. was found to have violated conditions of probation imposed on September 15, 1982 for engaging in delinquent conduct, and was committed to the Texas Youth Council (TYC). Immediately after his hearing, while walking to the adjacent jail, Vega broke away from a juvenile probation officer and escaped. Four months later, on March 1, 1983, at approximately 11:00 P.M., while in the company of his parents, police officers from Nixon, Texas, arrested Vega, and transported him to the Gonzales County Jail.[2]

The following morning, Eleno Vega, Jr., was visited once by the juvenile probation officer (Mr. Hall), and several times by the Director of the Juvenile Detention Facility (Deputy Gunby), neither of whom noticed anything unusual. At mid-morning, Deputy Gunby noticed that a bulb in Vega's cell had burned out. Vega was sitting at the edge of the bunk when Gunby left to replace the bulb. When he returned, fifteen or twenty minutes later, he found Eleno Vega, Jr. hanging from a shower curtain rod in his cell.[3] A yellow sweatshirt was found tied around his neck and onto the shower curtain rod. An autopsy was performed on Eleno Vega, Jr., and the medical examiner ruled the cause of death as suicide.

## II.

### Analysis

Except as pointed out in this opinion, this Court assumes without discussing that Plaintiffs have alleged proper causes of action under 42 U.S.C. § 1983. *See gener-*

ally *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (*overruled on other grounds*); *Monell v. Dept. of Social Services of the City of New York, et al.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). From the onset, the Court believes that dispositive of this motion are three undisputed material facts. First, the decedent had been incarcerated for approximately nine and one-half hours. Plaintiffs allege twelve hours in their first amended complaint; however, in a subsequent pleading[4] they admit that the period of incarceration was nine and one-half hours. Secondly, the medical examiner concluded that the death of the decedent was suicide. This opinion is based on two crucial findings by the medical examiner that (1) all physical evidence on decedent's body was consistent with suicide, and most importantly (2) no findings were inconsistent with suicide.[5] Thirdly, there is no evidence that decedent suffered any significant medical or psychological condition prior to or during the period of his incarceration, or for that matter, any medical or psychological condition at all. In fact, the medical examiner found decedent to be "well developed, [and] well nourished," and the two individuals who saw him last did not perceive anything unusual.

### A. Claims of Cruel and Unusual Punishment.

 Plaintiffs allege that decedent's Eighth Amendment rights were violated. Plaintiffs specifically allege that their son had spent the last twelve hours of his life in solitary confinement in less than a thirty square foot living space which included an exposed commode, and which did not have natural lighting. Further, they allege that their son's last hour was spent in complete darkness. They allege further that their son was confined in a cell with a "shower curtain rod" which was in fact a long PVC

---

2. The Gonzales County Juvenile Detention Facility consists of four single occupancy cells within the Gonzales County Jail, but separate from adult inmates. See generally TEX.FAM.CODE § 51.12 (1986) and TEX.REV.CIV.STAT.ANN. arts. 5115 and 5115.1 (Supp.1987).

3. During the resuscitation attempt, Deputy Gunby suffered a heart attack, and was taken to a nearby hospital.

4. Plaintiffs' Response to Defendant County of Gonzales' Motion to Dismiss.

5. *See* the Deposition of Vincent DiMaio, M.D.

construction pipe, able to withstand 250 pounds of weight; and, though there were two cells in the Gonzales County Jail, designed for confinement of children, which were identical to the cell in which the decedent was held, those two juvenile cells contained no "shower curtain rod" and were unoccupied. Lastly, according to the plaintiffs, decedent was "in good health" at the time of his arrest.

The Fifth Circuit has held that the Eighth Amendment applies to juvenile detention centers. *Morales v. Turman,* 562 F.2d 993, 998 n. 1 (5th Cir.1988). The typical standard to be applied to an Eighth Amendment claim is usually "the unnecessary and wanton infliction of pain" standard. *Whitley v. Albers,* 475 U.S. 312, 318–320, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986); *Beck v. Lynaugh,* 842 F.2d 759, 761 (5th Cir.1988). Where there is no evidence that conditions of detention either inflict unnecessary or wanton pain or are grossly disproportionate to the severity of the crimes warranting imprisonment, the general considerations proffered by Plaintiffs fall short of proving cruel and unusual punishment since the same did not lead to deprivations of essential food, medical care, or sanitation. *Rhodes v. Chapman,* 452 U.S. 337, 348–349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981). The Constitution does not mandate comfortable prisons, and such prisons cannot be free of discomfort. *See id.* Under the *Whitley/Chapman* standard, plaintiffs' Eighth Amendment claims fail.

Many of plaintiffs' allegations are simply not substantiated by the record. First, there is no evidence that decedent was placed in solitary confinement. Although there is evidence that he was placed in a single occupancy cell, separate from adult inmates as required by Texas law, and although it is undisputed that Vega was the only juvenile in the Detention Facility, this Court cannot infer from such facts that Vega was in "solitary confinement," nor does the Court infer any intent "to inflict unnecessary or wanton pain."

Secondly, there is no evidence that Vega was confined in a thirty square foot cell, rather he was confined in a single occupancy cell measuring sixty-three square feet. The Court fails to see how incarcerating a juvenile in a sixty-three square foot cell with an exposed commode fails to meet minimum constitutional standards. In *Chapman,* the Supreme Court held that the constitution did not forbid double-celling in cells that comprised sixty-three (63) square feet. *Chapman,* 101 S.Ct. at 2396. The Fifth Circuit has indicated that "neither sixty square feet nor forty square feet, nor any other measure is constitutionally ordained" with regards to the amount of space required by the Eighth Amendment. *Ruiz v. Estelle,* 679 F.2d 1115, 1147 (5th Cir.) *amended in part, vacated in part* 688 F.2d 266, *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1982). This Court again finds no violation of decedent's Eighth Amendment rights.

Whether discussing space or number of occupants in a cell, a significant factor in ascertaining whether the confinement meets constitutional standards is length of confinement. *Ruiz,* 679 F.2d at 1151 n. 169 (*citing Hutto v. Finney,* 437 U.S. 678, 686, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522, 531 (1978)). Here, where decedent was only incarcerated nine and one-half hours, the condition and length of incarceration fails to reach a level affected by the Eighth Amendment. *See id.* Furthermore, under Gonzales County policy, had Vega not committed suicide, he would have been transferred to TYC in two or three days.

Nor does this Court give much weight to the fact that decedent was "confined to a cell without natural light." There is no summary judgment evidence by any expert or admissible evidence of any standard requiring "natural light" in cells within detention facilities, nor has the Court found any authority to support that the lack of natural light would be violative of an inmate's Eighth Amendment rights. Furthermore, the summary judgment evidence establishes clearly that decedent did not complain about this, or any other condition of confinement.

The summary judgment evidence does establish, however, that the light bulb in

decedent's cell "burned out." Whether there was complete darkness or only partial darkness within the cell, one can hardly attribute violation of Eighth Amendment standards to a failed light bulb, especially considering that Deputy Gunby returned with a new bulb within fifteen or twenty minutes. Most damaging to Defendants is the undisputed evidence that decedent was placed in a cell with a shower which was used successfully in the suicide attempt. However, the placement of a child in a cell with a shower, perhaps in hindsight imprudent, cannot be the basis on which to infer "a wanton willingness to inflict unjustified suffering" on decedent. *Whitley, supra.*

What is unique about the allegations of this case is not only do the plaintiffs allege that these conditions inflicted pain and suffering, but also caused or contributed to decedent's death. The summary judgment record, however, is barren of any evidence as to why Eleno Vega, Jr. committed suicide. There is no evidence to suggest that any of the factors alleged by Plaintiffs in their first amended complaint caused or contributed in any way to their son's suicide. This Court could equally infer on the summary judgment record before it, that irrespective of any condition of incarceration, he would still have taken his life. The Court simply does not have any evidence as to what caused or contributed to Vega's decision to commit suicide, and it chooses not to speculate on this matter.

In this regard, Plaintiffs have failed to file any affidavits or point to any summary judgment evidence concerning any significant medical or psychological condition which would have led decedent to suicide or which would have put Defendants on notice to be especially watchful. Plaintiffs alleged that their son had "great fear of being alone in the dark," however, they failed to file any affidavits to raise such issue of fact. There is simply no evidence of any medical or psychological condition. The Court only knows that the absence of Deputy Gunby from the facility to replace the burned out bulb and/or the dark condition of the cell for fifteen or twenty minutes gave Vega the opportunity to commit suicide. Plaintiffs have failed to establish

any Eighth Amendment violation or any evidence even suggesting what factors caused or contributed to decedent's death, much less factors violative of the Eighth Amendment.

Both parties to this action place great emphasis on state law. *E.g.,* TEX.FAM. CODE § 51.12 (1986). Under the Texas Family Code the Gonzales County Juvenile Detention Facility was certified as a suitable facility for children on May 11, 1982 and again on May 11, 1983. Also, the Gonzales County Jail was certified to be in compliance with The Minimum Jail Standards of the Texas Commission on Jail Standards on December 13, 1982. *See* TEX.REV.CIV.STAT.ANN. art. 5115.1 (Supp.1987). Although there is much discussion in various depositions whether the detention facility recognized professional standards there is no summary judgment evidence specifying what those standards required, much less any evidence that any such standards were violated in any way. Even so, an action by a government entity which violates its own rules or those of the state is not a constitutional deprivation unless the conduct also trespasses on federal constitutional safeguards. *Ramirez v. Ahn,* 843 F.2d 864, 867 (5th Cir.1988).

In the Eighth Amendment context, after incarceration, only the "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Whitley* 475 U.S. at 318–320, 106 S.Ct. at 1084. Although conditions of confinement may constitute cruel and unusual punishment, *Chapman, supra,* no evidence of such conditions are established by this summary judgment record.

B. *Vega's Right to Treatment.*

█ Deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). This is true whether the indifference is manifested by prison guards in intentionally denying or delaying access to medical care or inten-

tionally interfering once prescribed. *See id.* 97 S.Ct. at 291. Deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983. *See id.* However, not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. *See id.*

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind" ... in order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is always such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Id.* at 105–106, 97 S.Ct. at 292.

Plaintiffs allege that the Defendants denied their son medical care on March 2 and 3 [sic], and that such deliberate indifference to their child's serious need for medical treatment of a psychological condition, as a result of the conditions of confinement, caused their son great fear. They allege that their son had great fear of being alone in the dark and had reacted hysterically in darkness in the past. They allege that the denial of medical care to children confined at the Gonzales County Jail was an official policy of the County of Gonzales, Texas, and/or a persistent and widespread practice of the Sheriff of Gonzales County, all of which caused the death of Plaintiffs' son.

Plaintiffs filed no counter affidavit, nor do they point the Court to any summary judgment evidence which might substantiate such allegations. Further, Plaintiffs allege in their First Amended Complaint that when their son was taken to jail he was in good health. There is no summary judgment evidence which would indicate that decedent was suffering from any medical or psychological condition. The Court simply fails to understand why Plaintiffs did not file an affidavit supporting such allegations if they were true.

■ Plaintiffs' allegations do not stop at a single episode of denial of medical treatment, but allege that it was the official policy of the Gonzales County Jail and of Gonzales County itself. Further, Plaintiffs allege in their Amended Complaint that such was a "persistent and widespread practice of Defendants Parsley and Gunby." Plaintiffs must identify the policy or practice and the county's policy maker or official to whom the body had delegated policy-making authority with actual or constructive knowledge of such custom, that caused Plaintiffs or decedent to be subjected to a deprivation of constitutional rights. *Grandstaff v. City of Borger, Texas,* 767 F.2d 161, 169 (5th Cir.1985), *cert. denied* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987). An isolated incident is not sufficient to show that a custom exists. *Bennett v. City of Slidell,* 728 F.2d 762, 768 n. 3 (5th Cir.1984) (*en banc*), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1986). Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy. *See id.* Further, a § 1983 plaintiff must state specific facts and not merely conclusory allegations. *Elliott v. Perez,* 751 F.2d 1472, 1479 (5th Cir.1985) (collecting cases).

■ The record before the Court fails to indicate any policy or practice, incidents or episodes of denial of medical care. Not only have Plaintiffs alleged mere conclusory allegations and no specific facts, *see id.,* they have failed to identify any evidence supporting their allegations that denial of medical treatment was the official policy of the jail and Gonzales County itself. Even if the Court were to assume *arguendo* that Vega was denied medical care, on this record, proof of one incident or episode is insufficient to prove any constitutional violation absent a showing the incident was a result of conduct directed by those who possess policy making authority. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) (single incident not sufficient); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), *on remand,* 792 F.2d 57 (6th Cir.1986) (one episode

caused by conduct expressly directed by policy makers would be sufficient).

### C. *Failure to Staff, Train and Supervise Juvenile Detention Facility*

Plaintiffs allege that Defendants impermissibly violated the Eighth and Fourteenth Amendments by their failure, as a matter of official policy to staff, train and supervise the Gonzales County Juvenile Detention Facility, and failed to provide procedures for the care of children confined at such facility in need of protection from themselves or others, which caused the death of their son. Plaintiffs further allege that such failure was the official policy of the County of Gonzales and that such policy was officially adopted and promulgated by County Judge Henry Valentine.

■ The official policy upon which local government can be sued may be based either (1) a policy, statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's law-making officers or their designees; or (2) a persistent widespread practice of officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984), *rev'd on other grounds*, 739 F.2d 993 (5th Cir.1984) (*en banc*); *Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir. 1984) (*en banc*).

> [A]n "inadequate" training program alone is not ordinarily the moving force behind an injured plaintiff's harm, because the ... officer who injures the plaintiff does not rely upon inadequate training as tacit approval of his conduct. It is not enough that the [county] could, but does not, reduce the risk of harm to the plaintiff.

*Palmer v. City of San Antonio, Texas*, 810 F.2d 514, 516 (5th Cir.1987) [quoting *Grandstaff v. City of Borger, Texas*, 767 F.2d 161, 169 (5th Cir.1985) *cert. denied*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987)].

Justice Rehnquist distinguished the *Monell* "policy" with the "policy" in *Tuttle* where the city's policy of training and supervising police officers resulted in inadequate training, and the constitutional violation alleged. 105 S.Ct. at 2434, 2436.

> [T]he type of "policy" upon which respondent relies and its causal relation to the alleged constitutional violation are not susceptible to such easy proof. In the first place, the word "policy" generally implies a course of action consciously chosen from among various alternatives; it is therefore difficult in one sense even to accept the submission that someone pursues a "policy" of "inadequate training", unless evidence be adduced which proves that the inadequacies resulted from the conscious choice—that is, proof that the policy makers deliberately chose a training program which would prove inadequate. And in the second place, some limitation must be placed on establishing municipal liability through policies that are not themselves unconstitutional, or the test set out in *Monell* will become a dead letter ...
>
> * * * * * *
>
> Proof of a single incident of an unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker otherwise the existence of the unconstitutional policy and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

*Id.* at 2436. The Fifth Circuit has shied away from the conclusion that a municipality's gross negligence in training its police force could constitute "policy" under *Monell*, regarding such holdings by other courts as a "most expansive view of *Monell*." *Stokes v. Bullins*, 844 F.2d 269, 274

(5th Cir.1988) [quoting *Berry v. McLemore*, 670 F.2d 30, 32–33 and 30 n. 1 (5th Cir. 1982) ].

The Fifth Circuit has expressly declined to rule whether there is a cause of action for failure to train a police force under § 1983.

> If any such action exists, it must be predicated upon gross negligence amounting to conscious indifference by the city and may not be imputed solely from the negligence or gross negligence of subordinate officials. There must be a pattern or practice of constitutional violations supporting such a theory.

*Stokes*, 844 F.2d at 274 [*citing Languirand v. Hayden*, 717 F.2d 220 (5th Cir. 1983), *cert. denied sub nom. Marino v. United States*, 465 U.S. 1022, 104 S.Ct. 1273, 79 L.Ed.2d 678 (1984) ].

■ After a thorough review of all of the summary judgment evidence, this Court finds no gross negligence amounting to conscious indifference by the county and no persistent widespread practice to violate the constitutional rights of juveniles, much less any evidence that the delegated policy-making authority, i.e., the Gonzales County Juvenile Board, had actual or constructive knowledge of such custom. Plaintiffs' fail to allege or establish what specific areas of training were inadequate. Such allegations not only fail the *Elliott* test, but also without summary judgment proof, the record fails to establish any evidence sufficient to meet the burden under Rule 56(e).

■ Furthermore, the summary judgment record fails to establish any other specific incident or episode where a prisoner or child committed or attempted to commit suicide, and failed to establish that any policy or custom of Gonzales County jail or juvenile detention facility caused or contributed to any suicide. What the summary judgment evidence indicates is that the suicide attempt occurred when Deputy Gunby left the jail to replace the burned out light bulb. When he returned he found Eleno Vega, Jr. dead. Perhaps one can argue that Vega should not have been left alone; however, such argument more correctly sounds in tort than § 1983. The summary judgment evidence fails to indicate any policy or custom of leaving juveniles alone in the dark. Further there is no evidence of any attitude, fear, or psychological condition on the part of the juvenile which could have put Deputy Gunby on notice not to leave the child unattended. Consequently, there is no evidence of a deliberate intent to injure him. Even so, if one were to assume such action by Gunby was negligence or gross negligence, one could not impute such conduct to the defendant county. *Stokes*, 844 F.2d at 274.

**D. *Violation of Due Process Rights.***

■ Plaintiffs allege that the deliberate and systematic lack of adequate care violated their son's right to protection against arbitrary abuse of power, and that the conditions of confinement, imposed for unadjudicated offenses, was a summary punishment imposed by defendants which caused his death.

As already indicated, this Court finds no evidence of a "deliberate and systematic lack of adequate care" or any policy or custom of leaving juveniles alone and unattended. Secondly, it is undisputed and, in fact, admitted in Plaintiffs' first amended complaint that Eleno Vega, Jr. was adjudged a delinquent and committed to the Texas Youth Commission [sic] until his eighteenth birthday by Judge E.W. Patterson, District Judge for the County of Gonzales, sitting as a juvenile court judge. The Court finds no conditions of confinement which were "imposed for unadjudicated offenses," nor does it find that the conditions of confinement amounted to summary punishment. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

In evaluating the constitutionality of prison conditions under the Fourteenth Amendment,

> [a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose. (citations omitted). Absent a showing of an expressed intent to punish on the part of detention facility officials,

that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." (citations omitted). Thus if a particular condition or restriction of pre-trial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Id.* 441 U.S. at 538–539, 99 S.Ct. at 1873–1874. Under the *Wolfish* standard Plaintiffs' allegations that the conditions of confinement amounted to summary punishment which led to his death must also fail. There is no evidence that Vega was mistreated, abused or assaulted. There is no evidence that he was not protected from adult prisoners.

The conditions of his detention met *Wolfish* standards. In *Wolfish*, pretrial detainees were housed in approximately seventy-five (75) square feet and were double-bunked with an uncovered toilet. *See id.* at 541, 99 S.Ct. at 1875. The Supreme Court indicated that there was no constitutional principle requiring "one man, one cell," *id.* 542, 99 S.Ct. at 1875, nor:

> requiring a detainee to share toilet facilities [in] admittedly rather small sleeping quarters with another person for generally a maximum period of sixty days
>
> . . . .

*Id.* at 543, 99 S.Ct. at 1876.

Although in hindsight, one may be critical of Deputy Gunby for leaving Vega alone in the dark, under this summary judgment record we do not infer any "intent to punish." Where there is no medical or psychological condition disclosed on the record which would lead a Court to infer that a thirteen year old's ability to think in a rational manner was impaired, any inference, by this Court, must acknowledge—as the medical examiner did—that the cause of death was principally, if not exclusively, attributable to Vega's own conduct.

■ The standard of review for prisoners' constitutional claims must be responsive to the policy of judicial restraint regarding prisoner complaints and to the need to protect constitutional rights. *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 2261–2262, 96 L.Ed.2d 64 (1987). Even with regard to the due process clause of the Fourteenth Amendment, a negligent act of an official causing unintended loss of or injury to life, liberty or property is not implicated thereby. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). Far from an abuse of power, lack of due care suggests no more than a failure to measure up to conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process. *See id.* 474 U.S. at 330–332, 106 S.Ct. at 665. That injuries inflicted by governmental negligence are not addressed by the United States Constitution is not to say that they may not raise significant legal concerns and lead to the creation of protectable legal interest. *See id.* 474 U.S. at 332–334, 106 S.Ct. at 666. Where lack of due care leads to serious injury, such lack of care does not approach the sort of abusive government conduct that the due process clause was designed to prevent. *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1988). Officials cannot realistically be expected to consider every contingency or minimize every risk. *Whitley,* 475 U.S. at 324–326, 106 S.Ct. at 1087. In a prison context, the due process clause affords no greater protection than does the cruel and unusual punishment clause. *Whitley* at 475 U.S. at 326–328, 106 S.Ct. at 1088.

### E. *Defense of Qualified Immunity.*

■ The standard for qualified executive immunity states that an executive official is entitled to immunity unless he violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted). Allegations about the breach of a statute or regulation are irrelevant to the question of an official's eligibility for qualified immunity in a suit over the deprivation of a constitutional right. *Gagne v. City of Galveston,* 805 F.2d 558, 560 (5th Cir.1986) *cert. denied,* — U.S. —, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). The Court must inquire whether the constitutional right at issue was clearly established at the time of the events in question. *See id.* Based on the record before this Court and to the extent that Plaintiffs imply that Defendants had a duty to protect their son from his own self-destructive behavior, the defense of qualified immunity is meritorious since the possible existence and scope of such duty was not even established in early 1983. *See id.* This Court holds, therefore, that Defendants have properly asserted the defense of qualified immunity as to any duty to protect decedent from his own destructive behavior. *Harlow, supra; Gagne, supra;* and *Elliott, supra.*

### F. State Pendent Claims

Plaintiffs allege violations of various statutory duties and commission of various intentional, grossly negligent, and negligent acts or omissions resulting in the death of Eleno Vega, Jr. Having ruled that Plaintiffs' § 1983 claims are without merit, and consequently all pendent state claims should be dismissed without prejudice, the Court expresses no opinion on these matters. Nonetheless, and only to the extent that they may impinge on Plaintiffs' § 1983 claims, such allegations require analysis.

■ As previously indicated, an action by a governmental entity which violates its own rules or those of the state do not necessarily constitute constitutional deprivation unless the conduct also trespasses on federal constitutional safeguards. *Ramirez, supra.* Holding, as it has, that the summary judgment evidence fails to establish any evidence of constitutional deprivation in this case, this Court finds such statutory allegations irrelevant to any con-

stitutional analysis. Again this Court expresses no opinion as to the merits of such allegations on the basis of state law.

■ Plaintiffs allege also that "one or more of the persons named" in the first amended petition committed intentional acts which resulted in the death of Eleno Vega, Jr., and that Defendants intentionally failed to allow the Plaintiffs to visit their son on the morning of March 2nd which "might" have prevented his death. There is no evidence that anyone killed, mistreated, assaulted, or in any manner abused the decedent. *See* Deposition of Vincent DiMaio. This Court also fails to see how not allowing the Plaintiffs to visit their son during the two or three hours of the morning of March 2nd rises to a constitutional deprivation; further there is no evidence in this record to conclude that such visit would have prevented Eleno Vega, Jr.'s death.

Lastly, this Court reiterates that negligent acts or omissions, or for that matter, grossly negligent acts or omissions not amounting to conscience indifference, do not rise to constitutional magnitude. *Daniels,* 474 U.S. at 327–328, 106 S.Ct. at 663; *Stokes,* 844 F.2d at 273–274 n. 6. Again, the Court expresses no opinion as to the merits of these state causes of action but only holds that Plaintiffs, upon this summary judgment record, fail to satisfy the factual or legal predicate upon which to defeat this motion for summary judgment as to § 1983 claims only. FED.R.CIV.P. 56(e)

### Conclusion

Having very carefully considered the motion of Defendants for Summary Judgment, the brief in support of the motion, all affidavits of record, all pleadings of record, and all discovery, including depositions of record, this Court is of the opinion that the motion of defendants for summary judgment under all § 1983 claims is well supported and that there are no genuine issues of material fact which remain for trial, and that the Motion of Defendants for Summary Judgment should be granted.

Defendants' Motion for Summary Judgment is hereby GRANTED as to all claims

and causes of action based on 42 U.S.C. § 1983 only, and judgment is entered for Defendants.

Having disposed of all constitutional claims upon which federal jurisdiction lies, the Court chooses not to exercise its pendent jurisdiction, and it, therefore, ORDERS all pendent state claims DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.