# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 4, 2025

Lyle W. Cayce
Clerk

No. 25-50014

Doctor Sonia Hernandez Caruso, D.O.,

*Plaintiff—Appellant*,

*versus*

Texas Medical Board; Susan D. Rodriguez, *Individually and in her official capacity as an officer of the Texas Medical Board*; Scott M. Freshour, *Individually and in his official capacity as an officer of the Texas Medical Board*; Amy Swanholm, *J.D., Individually and in her official capacity as an officer of the Texas Medical Board*; Sherif Zaafran, *M.D., Individually and in his official capacity as an officer of the Texas Medical Board*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:24-CV-217

_____

Before Higginson, Willett, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-50014

Sonia Hernandez Caruso, D.O., proceeding *pro se*, challenges the denial of a full medical license by the Texas Medical Board. The district court granted the Board's motion to dismiss. We AFFIRM.

I

A

The Texas Medical Board "is an agency of the executive branch of state government with the power to regulate the practice of medicine." TEX. OCC. CODE § 152.001. The Board has "sole discretion" to issue a medical license to applicants who meet statutory requirements. *Id.* § 155.002. It may also issue a "limited" or "restrict[ed]" license and "prescribe additional qualifications for an applicant, including education and examination requirements, conditions of employment, and application procedures." *Id.* § 155.006. After an initial review by the Executive Director, applications proceed to the Board's Licensure Committee. *Id.* § 155.007(a), (c). If the Licensure Committee determines that an applicant is ineligible for a license, it "submit[s] that determination" and its reasons to the full Board. *Id.* § 155.007(c). Before the Board finalizes that determination, an applicant may request a hearing before an administrative law judge (ALJ) of the State Office of Administrative Hearings (SOAH) within a certain window. *Id.* § 155.007(c), (e). The ALJ then submits proposed findings of fact and conclusions of law, and the Board decides the applicant's eligibility. *Id.* § 155.007(f). If the Board denies a license, it must provide the applicant "a written statement containing the reasons for the [B]oard's action." *Id.*

Under Texas law, issuing a restricted medical license or denying a full license is considered a "Method[] of Discipline." *Id.* § 164.001(b)(3). Under federal and state law, the Board must report any disciplinary action against a physician to the National Practitioner Data Bank. *See* 42 U.S.C. § 11101(2) (reporting obligations help "restrict the ability of incompetent physicians to

move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance"); Tex. Occ. Code § 164.060(b)(4).

B

In 2006, Caruso received her Doctor of Osteopathic Medicine degree from Ohio University College of Osteopathic Medicine. She completed a one-year internship and one-year general surgery residency at St. John's Episcopal Hospital, followed by an ophthalmology residency at St. John's and Interfaith Medical Center. She later relocated to Texas.

In April 2011, Caruso applied for a Texas medical license. In November 2012, she and her attorney appeared before the Licensure Committee, which recommended denial "based on a failure to practice medicine in a competent manner consistent with public health and welfare, as well as disciplinary action taken against Dr. [Caruso] by a health care entity due to unprofessional conduct and professional incompetence likely to harm the public." The Committee also recommended that, if requested within a year, she be granted a physician-in-training permit for additional ophthalmology training. The Board unanimously adopted the recommendation and denied Caruso's 2011 application. Caruso appealed and requested a hearing. In August 2015, an ALJ issued a Proposal for Decision concluding she was ineligible for an unrestricted medical license because, "among other things, she had not performed surgery since 2011 and needed additional training before she could safely operate again."

Meanwhile, Caruso was a research fellow at the Valley Retina Institute in McAllen, Texas. In December 2015, she informed the Board she had been accepted to a surgical fellowship and would require a full license. But on December 3, 2015, the Board issued a Final Order adopting the ALJ's findings and holding her ineligible.

No. 25-50014

From March 2016 to April 2018, Caruso worked for Kwiat Eye & Laser Surgery in Amsterdam, New York. In 2018, Caruso reapplied for a Texas medical license. The Licensure Committee found "no substantive changes" in her surgical training since her prior denial in 2015 and again recommended denial. The Board adopted that recommendation in 2019.

Caruso again appealed. Before her hearing, the Board sent Caruso a notice that "provided a statement of the time, place, and nature of the hearing; a statement of the legal authority and jurisdiction under which the hearing was to be held; a reference to the particular sections of the statutes and rules involved; and [a] short, plain statement of the factual matters asserted." The ALJ held a hearing in December 2020 at which Caruso represented herself. The record remained open for post-hearing submissions until April 2, 2021. The ALJ ultimately concluded the Board had carried its burden. On March 4, 2022, the Board adopted the ALJ's findings and granted Caruso a license—but only with restrictions:

> Applicant is RESTRICTED from performing any ophthalmological surgical procedures, including any form of eye surgery, laser procedures, intra-viscous procedures, or injections.
>
> This restriction remains in effect until such time as Applicant requests permission in writing to resume such surgical practice, personally appears before the Board to orally petition for the restriction [to] be lifted and provides clear and convincing evidence and information which in the discretion of the Board adequately indicates that Applicant is competent to independently perform such surgical procedures. Such evidence and information shall include at a minimum, but shall not be limited to, evidence that Applicant has completed an ACGME approved ophthalmology surgical training program.
>
> Upon presentation of clear and convincing evidenc[e] to the Board that Applicant is competent to independently perform

ophthalmological procedures, the restriction may be lifted
under such terms and conditions and for such time that the
Board in its discretion determines are necessary to adequately
protect the public.

The Board then updated her physician profile to reflect "Disciplinary Restrictions" and notified the Data Bank as required. At the time, Caruso also held active licenses in New Mexico and New York, traveling from Texas to practice in those states.

She unsuccessfully sought rehearing before SOAH. She did not appeal in state court but instead filed this *pro se* lawsuit on March 1, 2024, against the Board and four officers.

She raised claims under §§ 1983 and 1981, alleging that the Board violated her procedural due process rights under the Fifth and Fourteenth Amendments by denying rehearing, failing to give notice of the basis for discipline, and posting "wrong, false, [and] misleading" information on its website and to the Data Bank. Caruso also alleged Defendants discriminated against her when the Board granted unrestricted licenses to three male applicants with no retina or surgery training, while denying her the same. Caruso also raised a Title VII retaliation claim, alleging that the Board retaliated against her by both denying her a full license and posting the Final Order describing her restricted license as "Disciplinary Restrictions" after she raised concerns about discriminatory practices. Finally, Caruso alleged Defendants tortiously interfered with her employment contracts, disparaged her business reputation, defamed her, and exceeded their authority, in violation of state law. She later added claims under the Equal Protection Clause and the Eighth Amendment. She seeks money damages and injunctive relief ordering the Board to remove the restrictions from her license, its website, and the Data Bank.

No. 25-50014

The Board and its officers moved to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) based on sovereign immunity and for failure to state a claim under Rule 12(b)(6). The magistrate judge recommended dismissing all of Caruso's claims as follows: (1) Caruso's constitutional claims against the Board and the individual defendants in their official capacities for money damages were barred by sovereign immunity; (2) Caruso's constitutional claims against the individual defendants for prospective injunctive relief failed to meet the pleading standard under Rule 12(b)(6); (3) Caruso's remaining federal claims likewise failed under Rule 12(b)(6); and (4) since all federal claims were dismissed, the court declined supplemental jurisdiction over Caruso's state-law claims. Caruso filed timely objections, but the district court overruled them, adopted the recommendation in full, and granted Defendants' motion to dismiss.

## II

"We review dismissals under Rule 12(b)(1) and Rule 12(b)(6) de novo." *Boudreaux v. La. State Bar Ass'n*, 3 F.4th 748, 753 (5th Cir. 2021). For a 12(b)(1) motion, "the party asserting federal subject-matter jurisdiction[] has the burden." *Ala.-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 487 (5th Cir. 2014). And "[t]o survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But, "[e]ven so, mere conclusory allegations on a critical issue are insufficient." *Brown v. Tarrant Cnty.*, 985 F.3d 489, 494 (5th Cir. 2021) (internal quotations omitted).

No. 25-50014

## III

## A

We start with sovereign immunity.[1]

"[S]overeign immunity bars private suits against nonconsenting states in federal court." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). That bar extends equally to state agencies as well as to state officials acting in their official capacities. *Id.*; *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). Accordingly, the district court properly dismissed Caruso's claims against the Board and her damages claims against its officers.[2]

As for Caruso's claims for prospective injunctive relief, she argues the *Ex parte Young* exception applies. *See* 209 U.S. 123 (1908). *Ex parte Young*

---

[1] At the lower court and on appeal, Defendants have urged a qualified-immunity defense. The district court made no determination on qualified immunity, and neither do we. "[W]e employ the general rule 'that a federal appellate court does not consider an issue not passed upon below.'" *See Wise v. Wilkie*, 955 F.3d 430, 439 n.39 (5th Cir. 2020) (quoting *Firefighters' Ret. Sys. v. EisnerAmper, L.L.P.*, 898 F.3d 553, 561 (5th Cir. 2018)).

[2] Caruso argues the Board acted *ultra vires*, presenting an exception to sovereign immunity under Texas law. The district court concluded that the *ultra vires* exception did not apply. We agree. To invoke the *ultra vires* exception, a plaintiff must "do more than simply allege that the actions of the officer are illegal or unauthorized." *Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011) (internal quotations omitted). Here, Caruso's allegation of *ultra vires* action was limited to a single sentence: "The Texas Medical Board and the other four Defendants acted in Ultra Vires—(beyond their authority)." That falls well short.

Further, Caruso raised additional arguments that the district court did not address, concerning (1) congressional abrogation through federal law requiring the Data Bank's reporting scheme, (2) structural waiver by the Board's participation in the Data Bank, and (3) the Supremacy Clause. Even if any abrogation or waiver of sovereign immunity applies, Caruso's claims must nonetheless be dismissed under Rule 12(b)(6). *See infra* Section III.B–C. Therefore, we need not address these arguments here. *See Wise*, 955 F.3d at 439 n.39.

allows a plaintiff to seek prospective injunctive relief "against individual state officials acting in violation of federal law." *Paxton*, 943 F.3d at 997 (internal quotations omitted). The district court concluded the exception applied. "In determining whether the doctrine of *Ex parte Young* applies, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 451 (5th Cir. 2022) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotations and alterations omitted)).

Here, the Board officials "have some connection" with Texas's medical licensing and reporting scheme. *Book People, Inc. v. Wong*, 91 F.4th 318, 334 (5th Cir. 2024). And the injunctive relief Caruso seeks—the removal of the restrictions from her license and removal of the Board's postings reflecting those restrictions—is plainly prospective.

Defendants argue that Caruso seeks retrospective, rather than prospective, relief, characterizing the remedy as "a declaration that the past actions of [the Board] or any Individual Defendant were unlawful." We disagree. The posting of her restricted license on the Board's website and in the Data Bank is ongoing. So too is the status of her license itself. Like in *Planned Parenthood*, Caruso alleged she is "entitled to a license," that the denial of a full license occurred without procedural due process, and that "throughout the licensing process" she has been treated differently from those similarly situated. *See Planned Parenthood*, 24 F.4th at 452–53; *see also Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471–72 (5th Cir. 2020) ("[A]s long as the claim seeks prospective relief for ongoing harm, the fact that a current violation can be traced to a past action does not bar relief under *Young*." (cleaned up)). As such, the district court properly found that Caruso's claims for prospective injunctive relief fall within the *Ex parte Young* exception.

But that does not end the matter. As we've said before, "[w]e emphasize that the Rule 12(b)(1) inquiry 'does not include an analysis of the merits of the claim.'" *Planned Parenthood*, 24 F.4th at 454 (quoting *Verizon*, 535 U.S. at 646). Thus, while sovereign immunity doesn't pose a problem for Caruso's claims for prospective injunctive relief, Rule 12(b)(6) does.

## B

First, Caruso alleged that Defendants violated her procedural due process rights under the Fifth and Fourteenth Amendments.

For starters, Caruso's Fifth Amendment due process claim fails because the Fifth Amendment applies only to "violations of constitutional rights by the United States or a federal actor." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). Caruso has not alleged, nor could she plausibly allege, that Defendants were federal actors.

Likewise, Caruso's Fourteenth Amendment due process claim is insufficiently pled. Caruso offered several theories: that Defendants "failed to provide" her notice and reasons, "failed to inform" her of the legal bases, denied her motion for rehearing, and misreported the disciplinary action on the Board's website and to the Data Bank.[3]

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Greene v. Greenwood Pub. Sch. Dist.*, 890 F.3d 240, 242 (5th Cir. 2018) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). And "[t]o have a property interest in

---

[3] On appeal, Caruso raised a novel theory of due process based on an alleged denial of an unbiased decisionmaker. But we "will not consider arguments first raised on appeal . . . ." *Estate of Duncan v. Comm'r of Internal Revenue*, 890 F.3d 192, 202 (5th Cir. 2018) (citation omitted).

a benefit, a person clearly must have more than an abstract need or desire for it. [S]he must have more than a unilateral expectation of it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). The Texas Medical Practice Act is clear: "[T]he practice of medicine is a privilege and not a natural right of individuals." Tex. Occ. Code § 151.003(1). That said, "[i]t is well established that a reasonable, continued expectation of entitlement to a previously acquired benefit, such as a medical license, constitutes a cognizable property interest for purposes of due process protection." *Ramirez v. Ahn*, 843 F.2d 864, 867 (5th Cir. 1988).

Relevant here, Caruso never had a full, unrestricted license. Her first medical license in Texas was the restricted license she received in March 2022. As such, Caruso had no "previously acquired" full, unrestricted license in which she could claim a property interest. *See Ramirez*, 843 F.2d at 867. Accordingly, the district court properly dismissed her Fourteenth Amendment due process claim for lack of a cognizable property interest.[4]

## C

Caruso's other claims fare no better.[5]

First, Caruso alleged a violation of her equal protection rights because the Board "issued full unrestricted licenses" to three male doctors who had "never performed retina surgeries," but refused to grant the same license to

---

[4] The district court additionally explained that, even if Caruso had a cognizable property interest in a Texas medical license, she received sufficient notice and opportunity to be heard—"which is all that the Due Process Clause requires." For the reasons given by the district court, we likewise agree: even assuming Caruso held a property interest, her complaint fails to allege a denial of procedural due process.

[5] As discussed above, in her response to the motion to dismiss, Caruso introduced new claims under the Eighth Amendment and the Equal Protection Clause. The district court considered those newly raised claims in light of her *pro se* status. We do the same.

her, thus precluding her from participation in a surgical fellowship. "Generally, to establish [a Fourteenth Amendment] equal protection claim the plaintiff must prove that similarly situated individuals were treated differently." *Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021) (quoting *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999) (per curiam)). Though Caruso claims to have been on "equal playing ground but [] treated differently," she failed to provide any factual allegations that she and those three males were "in all relevant respects alike," *Hegar*, 10 F.4th at 513 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992))—for example, whether they had previously been denied medical licenses by the Board or had previously been found to exhibit "unprofessional conduct or professional incompetence likely to harm the public." Accordingly, the district court properly dismissed Caruso's equal protection claim.

Next, Caruso failed to state an Eighth Amendment claim. "The cruel and unusual punishment clause of the Eighth Amendment applies only in criminal actions, following a conviction." *Palermo v. Rorex*, 806 F.2d 1266, 1271 (5th Cir. 1987) (citing *Ingraham v. Wright*, 430 U.S. 651 (1977)).

Caruso also mentioned numerous other federal and state claims in her complaint.[6] The district court properly dismissed the remaining federal claims because each is inapplicable. *See* 18 U.S.C. § 242 (criminal statute with no private right of action); 42 U.S.C. § 2000e (employment law inapplicable to medical licensing disputes); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989) (explaining that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for

---

[6] In addition to her constitutional and § 1983 claims, Caruso listed the following statutes and regulations in her complaint: 18 U.S.C. § 242; 42 C.F.R. Part 1003; 42 U.S.C. § 1981; 42 U.S.C. § 2000e; 42 U.S.C. §§ 11111–12; Tex. Occ. Code § 164.060(b)(4); and 22 Tex. Admin. Code § 187.5.

violation of the rights guaranteed in § 1981 by state governmental units"); 42 C.F.R. § 1003.100 (regulation concerning the Office of Inspector General's Civil Monetary Penalties); 42 U.S.C. §§ 11111–12 (Health Care Quality Improvement Act, which Caruso has failed to show creates a private right of action).

As for Caruso's state-law claims, the district court properly declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). "The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

IV

The district court did not err in dismissing Caruso's complaint. We AFFIRM.